MATAGORDA COUNTY APPRAISAL DISTRICT, et al., Appellants,

v.

CONQUEST EXPLORATION COMPANY, Appellee.

No. 13–89–346–CV.

Court of Appeals of Texas, Corpus Christi.

April 19, 1990.

Russell R. Graham, Deborah S. Cartwright, Calame, Linebarger & Graham, Austin, for appellants.

James Popp, Patricia L. Sessa, M. Frank Powell, William F. Ikard, Austin, for appellee.

Before NYE, C.J., and SEERDEN and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is a property taxation case. Appellants, Matagorda County Appraisal District (MCAD) and Matagorda County Appraisal Review Board (Review Board) appeal from the summary judgment granted in favor of appellee, Conquest Exploration Company (Conquest). The trial court found that appellants incorrectly appraised and taxed Conquest for exempt mineral interests owned by the State of Texas, that the error was clerical, and that Conquest should receive a refund. Appellants present three points of error. We reverse the judgment granted by the trial court.

This conflict involves the 1987 tax year. Prior to May 1, 1987, Conquest's tax agent prepared and rendered to MCAD the percentage of mineral working interests of six producing gas wells owned by Conquest for Tax Year 1987. Subsequently, a professional appraisal firm hired by MCAD appraised the Conquest properties resulting in similar, but not identical, working interest percentages. On or about May 15, 1987, Conquest's tax agent received a Notice of Appraised Value setting forth Conquest's working interests for 1987 taxes. These notices informed Conquest to contact MCAD immediately if any of the information on the Notice was wrong or if there was a problem with the proposed appraised value of the properties. The Notice also informed Conquest that the deadline for written appeals to the Review Board regarding these matters was May 18, 1987. Conquest neither notified MCAD of any problems nor filed an appeal with the Review Board within the designated time period. The following table indicates the different percent working interest (% W.I.) values submitted in the present controversy:

| Well No. | RRC No. | % Royalty owned by State of Texas | % W.I. owned by [1] Conquest | % W.I. rendered by Conquest | % W.I. assessed by MCAD and noticed to Conquest |
|---|---|---|---|---|---|
| 5-A | 119941 | .210000 | .790000 | .833333 | .833333 |
| 1-AU | 121037 | .250000 | .750000 | .833333 | .833333 |
| 1-AL | 121038 | .250000 | .750000 | .833333 | .833333 |
| 1-D | 119727 | .250000 | .750000 | .833333 | .875000 |
| 8L | 118469 | .166667 | .833333 | .875000 | .875000 |
| 9 | 118954 | .166667 | .833333 | .875000 | .875000 |

1. The division orders produced by Conquest for the wells in question indicate that several individuals in addition to Conquest own working interest percentages in the wells. For purposes of this case we will attribute to Conquest what it has claimed throughout this suit—the total percent working interest per well.

On January 28, 1988, Conquest filed a Motion for Correction of the tax roll under Tex. Tax Code Ann. § 25.25 (Vernon Supp. 1990). The motion alleged that the working interest percentages attributed and taxed to Conquest on the appraisal roll exceeded the respective percentage working interests Conquest actually owned. Conquest also alleged that the excess working interest amounts were owned by the State of Texas and dedicated to the benefit of the permanent school fund and therefore exempt from taxation.[2] On January 29, 1988, Conquest paid MCAD the taxes on its proportionate interest, and separately tendered taxes on the alleged state exempt portion subject to refund under Tex. Tax Code Ann. § 26.15 (Vernon 1982).

Review Board denied Conquest's motion on jurisdictional grounds. Conquest subsequently filed suit seeking judicial review of appellant's denial by way of a Motion for Summary Judgment. The Review Board filed its own Motion for Summary Judgment. At a hearing for both motions, the trial court denied Review Board's motion and granted summary judgment in favor of Conquest.

The trial court found that MCAD's attribution of exempt property interests owned by the State of Texas in establishing the appraised values of Conquest's property on the tax appraisal roll was a clerical error. The court also found that this clerical error could be corrected by Tex. Tax Code Ann. § 25.25(c) (Vernon Supp.1990). Appellants were ordered to recalculate Conquest's property interests for the 1987 tax year and correct the 1987 appraisal roll accordingly. Furthermore, appellants were ordered to reduce the respective appraised values to those values representing only the appraisal of Conquest's owned/operat-

ed interests. Through this order, Conquest was to receive a $32,000 ad valorem tax refund.

The movant for a summary judgment has the burden of showing that no genuine issue of material fact exists and therefore the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985); *Wyatt v. Mealy,* 704 S.W.2d 63, 64 (Tex.App.—Corpus Christi 1985, no writ); *Marshall v. Garcia,* 514 S.W.2d 513, 518 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); *see also City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–79 (Tex. 1979). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon,* 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Nixon,* 690 S.W.2d at 549. On appeal as well as in the trial court the issue is not whether the summary judgment proof raises a fact issue regarding the essential elements of a plaintiff's claim or cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Denison v. Haeber Roofing Co.,* 767 S.W.2d 862, 864 (Tex.App.—Corpus Christi 1989, no writ); *McCurry v. Aetna Casualty and Surety Co.,* 742 S.W.2d 863, 866 (Tex.App.—Corpus Christi 1987, writ denied); Tex.R.Civ.P. 166a(c).

Additionally, Conquest incorrectly argues that it paid tax on the percent working interest owned by the State of Texas. The division orders clearly indicate that the State of Texas has a *royalty interest* and no working interest in any of the Conquest wells. Neither the leases nor the division orders indicate that the State of Texas participated in the production costs for any of these wells.

---

**2.** The percent working interest attributed to Conquest in the respective Railroad Commission division orders differs from the amounts rendered by Conquest's tax agent to appellant's appraisal agent. Conquest argues that on two separate occasions it sent appellants copies of the Railroad Commission Division Orders for the six wells in this case. Appellants specifically deny that they or the appraisal agent ever received a copy of the division orders until December 1987 when Conquest alleged error in the appraisal roll.

ADMINISTRATIVE REMEDIES

Appellants contend in point of error number two that the trial court erred in granting Conquest's motion for summary judgment because Conquest failed to exhaust its proper administrative remedies pursuant to the Code[3] and voluntarily paid the full amount of taxes assessed for 1987, thereby precluding any refund and change to the 1987 appraisal roll. Appellants argue that the provisions in chapters 41 and 42 of the Code are the exclusive remedies available to property owners. Conquest argues that it is unconstitutional to tax the properties owned by the State of Texas and dedicated to the permanent school fund, and therefore, as a matter of law, Conquest did not need to follow the administrative remedies in those chapters. We agree that Conquest did not exhaust its administrative remedies, but disagree that chapters 41 and 42 provide the sole remedy available to taxpayers.

■ Conquest argues that it is unconstitutional to tax those property interests belonging to the State and dedicated to the permanent school fund because such interests are tax-exempt. *See* Tex. Const. art. VII § 5; Tex.Nat.Res.Code § 11.041 (Vernon 1987). Furthermore, Conquest asserts that these interests are tax-exempt as a matter of law. *See City of Marlin v. State*, 205 S.W.2d 809, 810 (Tex.Civ.App.—Waco 1947, no writ); Tex. Const. art. VII § 5, VIII § 2, XI § 9; Texas Tax Code Ann. § 11.11(a) (Vernon Supp.1990). Recently, the Texas Attorney General stated that the State's interest in land that is part of the permanent school fund is exempt from ad valorem taxes, even though the State has leased the land to a private concern to be used for a private purpose. Tex. Atty.Gen.Op. JM–1049 (1989). Conquest concludes that this exemption precludes having to follow the administrative remedies of chapters 41 and 42 of the Code to ensure relief. We disagree.

Contrary to what Conquest alleges and as we stated previously, the State has no

working interest in any of the wells in controversy. The division orders clearly reveal that the State only receives a royalty interest from these wells. A "Royalty interest" by definition is a share of the production, [of an oil or gas well] *free of the costs of production.* H. Williams & C. Meyers, *Oil and Gas Terms,* 862–63, 7th ed. (1987) (emphasis added). Because the State has no working interest in any of the wells in controversy, Conquest was not taxed for any property interest owned by the State. Rather, both Conquest and appellants attributed to Conquest a larger working interest percentage than actually existed for the wells. The taxation of these wells did not violate any constitutional or statutory provisions or Attorney General opinions.

■ The Code provides for correction of errors in the tax roll both before and after it has been approved by the appraisal review board. A taxpayer is entitled to receive notice of the tax appraisal affecting his property. Tex. Tax Code Ann. §§ 25.-12, 25.19(a) (Vernon Supp.1990). Chapter 41 provides for review of the appraisal records by the appraisal review board and for taxpayer protests. *See* Tex. Tax Code Ann. §§ 41.01–41.47 (Vernon 1982 and Supp.1990). Both protest and review of the records procedures occur before the appraisal review board approves the records. Tex. Tax Code Ann. § 41.47 (Vernon Supp.1990). A property owner is entitled to protest a variety of issues before the appraisal review board, including the determination that he is the owner of property vel non. *Robstown Independent School District v. Anderson,* 706 S.W.2d 952 (Tex.1986); Tex. Tax Code Ann. § 41.41(7) (Vernon Supp.1990). The chief appraiser or the review board may correct errors in the appraisal roll if such errors are brought to their attention before the appraisal records are approved. Tex. Tax Code Ann. §§ 41.08, 41.09, 41.10 (Vernon 1982); Tex. Tax Code Ann. § 41.12 (Vernon Supp.1990). The appraisal records must be

---

**3.** All references to "the Code" are to the Texas Tax Code unless otherwise indicated. Furthermore, all other references to sections are to other sections of the Texas Tax Code unless otherwise indicated. Tex.Tax Code Ann. (Vernon 1982).

approved by July 20 of a tax year. Tex. Tax Code Ann. § 41.12 (Vernon Supp.1990). Tax bills are mailed to the property owner by October 1. Tex. Tax Code Ann. § 31.01 (Vernon Supp.1990).

■ A property owner challenging a property appraisal matter before the appraisal records are approved by the review board must follow the exclusive remedies in chapter 41 of the Code. *See Texas National Bank of Baytown v. Harris County*, 765 S.W.2d 823, 826 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Dallas County Appraisal District v. Lal*, 701 S.W.2d 44, 46 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Failure to follow these remedies precludes judicial review of the review board's decisions. *See Harris County*, 765 S.W.2d at 826, *Lal*, 701 S.W.2d at 46; *Brooks v. Bachus*, 661 S.W.2d 288, 290 (Tex.App.—Eastland 1983, writ ref'd n.r.e.). Additionally, failure to follow these rules deprives the district court of any jurisdiction over pre-approval protests. *See Appraisal Review Board v. International Church of the Foursquare Gospel*, 719 S.W.2d 160 (Tex.1986); *Herndon Marine Products, Inc. v. San Patricio County Appraisal Review Board*, 695 S.W.2d 29, 34 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Rockdale Independent School District v. Thorndale Independent School District*, 681 S.W.2d 225, 227 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

■ In the present case, it is undisputed that Conquest received actual notice regarding the 1987 proposed appraisal values. The notice used a different working interest percentage for one of the wells in question from that which Conquest rendered. This difference obligated Conquest to contact MCAD should Conquest wish to protect its rights. Conquest neither contacted nor protested to MCAD or Review Board within the designated complaint period. Instead, Conquest waited 4½ months after the appraisal records were approved to file its complaint with appellants. As such, Conquest failed to exhaust that portion of the Code's administrative remedies available for correcting errors in the appraisal records before they were approved by Review Board. Point of error number two is overruled.

## JURISDICTION

■ Point of error number three alleges that the trial court erred in denying appellant's plea to the court's jurisdiction and appellant's motion for summary judgment as the evidence introduced proved as a matter of law that Conquest failed to adhere to the administrative remedies of the Texas Tax Code, in addition to Conquest's voluntary payment of the 1987 assessed taxes, thereby precluding any change to the 1987 appraisal roll.

Our ruling on point of error number two indicates that Conquest failed to exhaust its administrative remedies for complaints and errors regarding the appraisal records. As a result, the court had no jurisdiction to decide any issues concerning alleged errors in the appraisal records.

However, regarding issues raised in point of error number one, the trial court had jurisdiction to decide whether a clerical error existed in the appraisal roll. Section 25.25(a) states: "Except as provided by chapters 41 and 42 of this code *and by this section*, the appraisal roll may not be changed." (Emphasis added). The language clearly indicates that the correction of errors in the appraisal roll is another exercise of the appraisal review board's quasi-judicial power. The court did not err in denying appellant's plea to the court's jurisdiction and motion for summary judgment as it pertained to the determination of whether a clerical error existed in the appraisal roll.

## CLERICAL ERROR

Point of error number one complains that the ownership interests of six gas wells attributed to Conquest on appellant's 1987 appraisal roll did not constitute a clerical error as a matter of law and that no evidence was presented to support such a determination by the trial court as a matter of fact. Appellant also argues that no evidence was presented to support the trial court's order to reduce the appraisal values of the subject properties.

■ Once the appraisal review board approves the appraisal records, the records become the "appraisal roll" which cannot be changed. Tex.Tax Code §§ 25.25(a), 26.-15(a) (Vernon Supp.1990). Nevertheless, § 25.25(c) does provide that the property owner may, under certain circumstances, correct the appraisal roll. Section 25.25(c) provides:

> At any time,[4] the appraisal review board, on motion of the chief appraiser, or of a property owner may direct by written order changes in the appraisal roll to correct:

> (1) *clerical errors that affect a property owner's liability for a tax;*

Tex.Tax Code Ann. § 25.25(c) (Vernon Supp.1990) (emphasis added). The language of the statute indicates that the legislature recognized that specific errors could occur after the appraisal records have been approved. This statute provides the administrative remedy for the correction of specific errors appearing in the appraisal roll. As a result, a property owner is not precluded from a tax refund if he proves that § 25.25(c) applies to his situation.

Conquest urges that the allegedly incorrect working mineral interest percentages taxed to Conquest are "clerical errors" which can be corrected by § 25.25(c). The Code does not define the term "clerical error" and both parties urge different interpretations regarding the breadth of coverage afforded by this statute. Nevertheless, the Texas Property Tax Board has stated that "these changes do not represent changes of thought or decision on the part of the appraisal review board; rather, they conform the roll to what the appraisal review board in good faith intended in approving it." Tex.Prop.Tax Board, Text No. 325, Property Tax Law 75 (Oct.1984); *See also* Katz & Muller, Procedural Rights and Remedies under the Property Tax Code—A Guide to the Code, Recent Amendments, and Developing Case Law, 18 St. Mary's L.J. 1209, 1217 (1987).

■ "Clerical error" is generally defined as "a mistake in writing or copying." Black's Law Dictionary 229 (5th ed. 1979). The term is frequently discussed regarding *nunc pro tunc* judgments. The Texas Supreme Court describes clerical errors as those preventing the record from accurately reflecting the judgment actually rendered. *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040, 1041 (1912). Whether errors are "clerical" is a law question and the trial court's determination of this issue is not binding on the appellate court. *Finlay v. Jones*, 435 S.W.2d 136, 138 (Tex.1969).

A mistake which is "clerical" in nature is one which is not the result of judicial reasoning, evidence, or determination. *Wood v. Griffin & Brand of McAllen*, 671 S.W.2d 125, 128 (Tex.App.—Corpus Christi 1984, no writ); *Mogford v. Mogford*, 616 S.W.2d 936, 942 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). To establish that the error was, in fact, clerical, it must be clearly shown that the written judgment signed by the trial judge and entered of record did not correctly reflect the judgment actually rendered by the court. *Wood*, 671 S.W.2d at 128–9. Additionally, errors in rendered and entered judgments are not "clerical" merely because errors were based upon or grew out of clerical errors. *Universal Underwriters Insurance Co. v. Ferguson*, 471 S.W.2d 28, 30 (Tex.1971); *Finlay*, 435 S.W.2d at 138. When determining whether a clerical error exists the critical issues are:

(1) When did the trial court complete its deliberative processes and officially announce its judicial determination, and,

(2) Did the judgment entered reflect that judgment which the court actually rendered and not the judgment which the court might or ought to have rendered.

*Wood v. Griffin & Brand of McAllen*, 671 S.W.2d 125, 129–31 (Tex.App.—Corpus Christi 1984, no writ).

■ We find that the definitions and issues distinguishing clerical errors from ju-

---

**4.** Effective January 1, 1990, § 25.25(c) limits the correction of clerical errors to any time before the end of three years after January 1 of a tax year.

dicial errors in *nunc pro tunc* proceedings are applicable to the correction by the appraisal review board of clerical errors in the appraisal roll. The appraisal district prepares a record of all taxable property in the district and states the appraisal value for each. Tex.Tax Code Ann. § 25.01(a) (Vernon 1982). The appraisal review board examines the appraisal records to determine whether appraisals are substantially uniform, exemptions are properly granted, and the appraisal records conform to their legal requirements. *See* Tex.Tax Code Ann. § 6.01 (Vernon Supp.1990), § 41.01 (Vernon 1982). When a protest is filed, the review board schedules a hearing where the property owner may contest any ad valorem tax matter adversely affecting him. *See* Tex.Tax Code Ann. § 41.41 (Vernon Supp.1990). A property owner may appeal an adverse decision of the review board to the district court. Tex.Tax Code Ann. § 42.01 (Vernon 1982). The approved appraisal records become the appraisal roll. Tex.Tax Code Ann. § 25.24 (Vernon 1982). The review board, like a trial court with its judgment, may correct clerical errors affecting a property owner's tax liability which are entered upon the appraisal roll. Tex.Tax Code Ann. § 25.25(a),(c) (Vernon Supp.1990). The notification of the property owner, his right to a protest hearing before the appraisal records become the appraisal roll, the right to appeal an adverse decision to the district court, and the limited right to petition for a change in the appraisal roll indicates that the review board performs a quasi-judicial function by correcting and approving the appraisal records and correcting the appraisal roll.

Conquest claims that *Liland v. Dallas County Appraisal District,* 731 S.W.2d 109 (Tex.App.—Dallas 1987, no writ), is dispositive regarding the application of § 25.25(c). In *Liland,* the taxpayer received no notice of the 1982 and 1983 appraisal values of his property until he received his tax bills. The property owner alleged that none of the remedies provided in chapter 41 were available because all applicable time limits for relief had expired. The property owner pointed to § 41.411 of the Code which was adopted in 1985, which

specifically provided procedures for protesting lack of notice. Because the Code did not provide such a procedure for earlier tax years, the property owner in *Liland* was forced to seek a remedy in district court.

The court of appeals determined that chapter 41 did not govern the facts of the *Liland* case. The court held that chapter 41 applies when the chief appraiser purposefully increases the appraisal value of property and notifies the taxpayer, or when a clerical error occurs and the chief appraiser or the review board catches the error and is able to correct it before the appraisal records are approved.

The court also determined that § 25.25 provided a remedy to correct errors in the appraisal roll, even those errors made in the appraisal records. Because the property owner alleged that the appraisal district made a clerical error in appraising his property, the Court reasoned that he was not precluded from filing a motion with the review board to correct the appraisal roll. Furthermore, should the appraisal district determine that a clerical error existed in the tax bills in question, the taxing units must refund the property owner the difference between the tax paid and the tax legally due. The court ruled that because the property owner failed to exhaust the remedy available under § 25.25(c), the district court correctly dismissed the property owner's action for want of jurisdiction.

■ We disagree with *Liland* for several reasons. In the present case, Conquest received actual notice of the proposed appraisal values and had ample time to protest any discrepancies within the allotted period; therefore, Conquest waived the remedies available in chapter 41. Second, as we stated above, chapter 41 deals mostly with the protection of the property owner's due process rights by allowing him to protest such matters as discrepancies in appraisal values. These protective measures ensure that the review board approves the appraisal roll accurately, efficiently, and in good faith. Should a property owner fail to receive an appraisal notice, he may now protest such under § 41.411

and is allowed to do so even after the appraisal roll is approved. Tex.Tax Code Ann. § 41.411 (Vernon Supp.1990).

Third, we specifically disagree with the *Liland* court's interpretation that § 25.25 allows for corrections of clerical errors which have not been identified before the appraisal records are approved and become the appraisal roll. To allow such corrections would circumvent the rules of chapter 41. The appraisal roll would have little dependability from which taxing entities could create their budgets if a person who received an appraisal notice waited until he received his tax bill to file a protest regarding his appraisal. Section 25.25 is entitled "Correction of Appraisal Roll." We believe the legislature intended that § 25.25 allow for the correction of clerical errors generated and initiated in the appraisal roll. To allow otherwise would allow a property owner with proper notice two identical remedies and allow unnecessary instability in the tax rolls. Finally, the property owner in *Liland* should have asserted his common law remedies because at that time, the Code had no remedy to correct overpayment of taxes caused by failure to give proper notice of appraisal values. *See* Katz & Muller, Procedural Rights and Remedies Under the Texas Property Tax Code—A Guide To the Code, Recent Amendments, and Developing Case Law, 18 St. Mary's L.J. 1209, 1232 (1987). Consequently, we conclude that Conquest may be entitled to a refund only if appellants made a clerical error when determining the appraisal roll. Accordingly, we must apply the two inquiries stated above from *Wood v. Griffin & Brand of McAllen, supra*, to determine whether the working interest values approved by the Review Board are clerical errors.

 MCAD and its appraisal agent prepared in good faith a proposed assessment of Conquest's taxes for 1987. Review Board determined in good faith that the proposed values were correct and approved the appraisal record. In doing so, Review Board officially announced its quasi-judicial determination of the appraisal roll. We find that Review Board correctly determined the appraisal roll because Conquest did not notify Review Board of any discrepancy during the designated protest period. Furthermore, Conquest has not proven that Review Board erred when it appraised the working interest values in question. Conquest indicated that the values as appraised differed from those in the division orders, but failed to prove that appellants had actual notice of or access to those documents or other information which rendered appellant's appraisal incorrect.

 In the second step of our inquiry, the working interest percentages in Conquest's notice from MCAD and the working interest percentages in the appraisal records approved by Review Board are identical to those appearing on the appraisal roll. There was no discrepancy between the values approved by the Review Board and those percentages on the appraisal roll. As such, there was no clerical error in the appraisal roll.

 We conclude that Review Board did not err when it approved that portion of the 1987 appraisal roll affecting Conquest. Furthermore, no clerical error existed in the appraisal roll which affected Conquest's interests. Conquest received a correct tax bill based upon the appraisal roll determination. Although Conquest was taxed for a greater percent working interest that it owned, such error, if any existed, was judicial rather than clerical in nature because MCAD prepared an accurate appraisal and gave Conquest timely notice of those values and Review Board, in good faith, approved the appraisal records when it did not discover any errors contained therein.

We hold that the trial court erred when it granted Conquest a refund because the ownership interests of the pertinent gas wells reflected on the 1987 appraisal roll did not constitute a clerical error as a matter of law. Point of error number one is sustained.

We REVERSE the judgment of the trial court and RENDER judgment that Conquest is neither entitled to a correction of

the appraisal roll nor a refund of any of its 1987 ad valorem taxes.