**COLLIN COUNTY APPRAISAL DISTRICT, Appellant,**

v.

**NORTHEAST DALLAS ASSOCIATES and Resolution Trust Corporation in its Capacity as Receiver for Southwest Federal Savings Association, Appellees.**

No. 05–92–00277–CV.

Court of Appeals of Texas, Dallas.

May 18, 1993.

G. Leroy Street, Daniel P. Donovan, Dallas, for appellant.

Judith A. Knies, Peter William Low, Austin, for appellees.

Before THOMAS, BURNETT and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

This is an ad valorem property tax case. The issue presented by the parties is whether a property owner is entitled to have the appraisal roll corrected for a clerical error or misdesignation of the property when the property owner submits erroneous information about the property. Northeast Dallas Associates (Northeast) and Resolution Trust Corporation (RTC) filed a de novo appeal in the trial court from an adverse ruling of the Collin County Appraisal District (CCAD) that the property did not qualify for appraisal as open-space land based on documents that Northeast submitted to CCAD. The trial court granted a summary judgment in favor of Northeast and RTC, and denied CCAD's motion for summary judgment. We reverse and render because section 25.25(c) of the Texas Property Tax Code does not

provide a method to correct the appraisal roll for clerical errors or misdesignation of the property owner.

Northeast applied to receive open-space land appraisal for property it owned for the 1989 tax year. A box checked on the application indicated that either a nonresident alien or a foreign government owned the property. On the basis of this information, CCAD denied Northeast's application. On May 5, 1989, CCAD sent Northeast a letter informing it of the decision. The letter notified Northeast that section 41.41(5) of the Texas Property Tax Code entitles a property owner to protest the determination that his land does not qualify for appraisal as open-space land before the appraisal review board. Because Northeast moved its offices after it filed the application, it did not receive the notice of denial until June 5, 1989. The 1989 appraisal records were approved on July 13, 1989. Collin County Appraisal Review Board did not receive any notice of protest from Northeast prior to this time regarding the denial of open-space land appraisal for its property.

Northeast filed a Chapter 11 bankruptcy petition in August 1988. On January 2, 1990, Southwest Savings Association, after obtaining an order from the bankruptcy court lifting the automatic stay, foreclosed its deed of trust lien against the property. Southwest Savings Association paid the market value taxes on the property under protest. Market value taxes assessed against the property for the tax year 1989 were approximately $105,000. Taxes on the property, if it had qualified for open-space land appraisal, would have been about $1,200. In June 1990, RTC placed Southwest Savings Association into receivership and transferred the property to Southwest Federal Savings Association (Southwest).

Northeast and Southwest filed protests with the Collin County Appraisal Review Board to change the 1989 appraisal roll in February 1991. The review board denied the protests. Northeast and Southwest then filed a petition in district court to appeal the review board's administrative order. Subsequently, RTC was appointed as receiver for Southwest. RTC filed a motion to substitute itself as plaintiff in place of Southwest, which the trial court granted.

Northeast and RTC filed a motion for summary judgment. CCAD also filed a motion for summary judgment. Appellees alleged in their motion that the denial of open-space land appraisal could be corrected under either Texas Property Tax Code section 25.25(c)(1) as a clerical error or section 25.25(c)(3) as a mistake of form. CCAD alleged in its motion that the denial of open-space land appraisal could not be corrected under either section.

The undisputed facts showed that Richard Bartoccini made a mistake when he prepared the application for the 1988 tax year, for which the property nevertheless received open-space land appraisal. Bartoccini mistakenly marked the "yes" box in response to the question on foreign ownership. When Marvin Levin filled out the application for the 1989 tax year, he copied the 1988 application. Further, the uncontested evidence shows that CCAD denied Northeast's application for open-space land appraisal because it indicated foreign ownership of the property. Land is not eligible for open-space land appraisal if the property is owned by a nonresident alien, a foreign government, or a corporation, partnership, trust, or other legal entity in which a nonresident alien or foreign government owns a majority interest. TEX.TAX CODE ANN. § 23.56(3) (Vernon 1992).

A foreigner or foreign entity did not own the property. Northeast is a California limited partnership. Marvin Levin Land Company, a California corporation, is the sole general partner. All the limited partners are residents of the United States. Therefore, designation of foreign ownership on the application and CCAD's denial of open-space land appraisal occurred because Northeast made a mistake in answering a question on the application.

The trial court found that appellees were entitled to relief under section 25.25(c) of the Texas Property Tax Code. The court granted Northeast and RTC a summary

judgment and ordered the 1989 appraisal roll changed to reflect that the property qualified for open-space land appraisal.

■ In reviewing a summary judgment record, we apply the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A summary judgment proceeding seeks to eliminate patently unmeritorious claims and untenable defenses, not to deny a party its right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (Tex.1952).

The evidence in this case is not disputed. Therefore, the only issue before this Court is whether, as a matter of law, a property owner may rely on section 25.25 of the Texas Property Tax Code to correct the appraisal roll when the error results from the property owner's report to the taxing authority.

Taxpayer protests of the appraisal records to the appraisal review board are provided for in Chapter 41. *See* TEX.TAX CODE ANN. §§ 41.01–41.47 (Vernon 1992). A property owner is entitled to protest before the appraisal review board a determination that his land does not qualify for open-space land appraisal. TEX.TAX CODE ANN. § 41.41(5) (Vernon 1992). A protest must be filed with the appraisal review board within 30 days after notice of the appraisal is received, or before the appraisal review board approves the appraisal records if the property owner shows good cause for failure to file the notice on time. TEX.TAX CODE ANN. §§ 41.44(a)(3) & (b) (Vernon 1992). If a property owner does not receive an appraisal notice, he may protest

before the appraisal review board even after the appraisal roll is approved. TEX.TAX CODE ANN. §§ 41.411 & 41.44 (Vernon 1992).

Northeast received notice of the appraisal on June 5, 1989. The Collin County Appraisal Review Board approved the 1989 appraisal records on July 13, 1989. Northeast had the opportunity to protest CCAD's decision to deny the property open-space land appraisal for the 1989 tax year within the applicable time limits. Northeast, however, did not file a protest with the Collin County Appraisal Review Board until February 1991. Thus, when the appraisal review board approved the appraisal record without the open-space land designation, it became the appraisal roll. TEX.TAX CODE ANN. § 25.24 (Vernon 1992). The appraisal roll may be changed only under certain circumstances as follows:

(a) Except as provided by Chapters 41 and 42 of this code and by this section, the appraisal roll may not be changed.

. . . .

(c) At any time before the end of five years after January 1 of the tax year, the appraisal review board, on motion of the chief appraiser or of a property owner, may direct by written order changes in the appraisal roll to correct:

(1) clerical errors that affect a property owner's liability for a tax imposed in that year;

. . . . or

(3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll.

TEX.TAX CODE ANN. § 25.25 (Vernon 1992).

First, CCAD claims that section 25.25(c)(1) does not allow a property owner to compel a change in the appraisal roll because of a "clerical error" the owner made in completing an application for an open-space land appraisal.

A clerical error is defined in section 1.04(18) of the Texas Property Tax Code to mean an error:

(A) that is or results from a mistake or failure in writing, copying, transcribing,

entering or retrieving computer data, computing, or calculating; or

(B) that prevents an appraisal roll or a tax roll from accurately reflecting a finding or determination made by the chief appraiser, the appraisal review board, or the assessor; however, "clerical error" does not include an error that is or results from a mistake in judgment or reasoning in the making of the finding or determination.

TEX.TAX CODE ANN. § 1.04(18) (Vernon 1992).

Prior to the enactment of the statutory definition, the Texas Supreme Court defined clerical errors, in the context of nunc pro tunc cases, as those preventing the record from accurately reflecting the judgment actually rendered. *Universal Underwriters Ins. Co. v. Ferguson*, 471 S.W.2d 28, 29 (Tex.1971); *Coleman v. Zapp*, 105 Tex. 491, 494, 151 S.W. 1040, 1041 (1912). Courts interpreted a "clerical error" to be a mistake that is not the result of judicial reasoning, evidence, or determination. *See Matagorda County Appraisal Dist. v. Conquest Exploration Co.*, 788 S.W.2d 687, 693 (Tex.App.—Corpus Christi 1990, no writ). Establishing that the error was clerical required a showing that the written judgment signed by the trial judge and entered of record did not reflect the judgment actually rendered by the court. *Id.* Additionally, errors in rendered and entered judgments were not "clerical" merely because errors were based upon or grew out of clerical errors. *Id.*

In *Conquest* the court held that "the definitions and issues distinguishing clerical errors from judicial errors in nunc pro tunc proceedings are applicable to the correction by the appraisal review board of clerical errors in the appraisal roll." *Id.* at 693–94. *Conquest* held that section 25.25 allowed only for corrections of clerical errors made by the appraisal district between the time the appraisal records are approved and the time the appraisal roll is prepared. *Id.* at 695. And this Court, in *Liland v. Dallas County Appraisal Dist.*, 731 S.W.2d 109, 112 (Tex.App.—Dallas 1987, no writ), held that section 25.25(c)(1) provided a proper recourse to remedy a clerical error in the appraisal roll when the taxpayer did not receive notice of the new appraisal value. The court in *Conquest* interpreted *Liland* to allow corrections of clerical errors made by the district in the appraisal roll as well as clerical errors in the appraisal records that were not identified before the review board approved the roll when there was no notice of the increased appraisal to the taxpayer. *Conquest*, 788 S.W.2d at 694.

Neither *Conquest* nor *Liland* addressed whether a mistake made by a property owner in supplying information to the appraisal district could be a clerical error correctable under section 25.25. Both cases hold, however, that clerical errors do not result when the appraisal district intentionally increases the appraisal value of a property and sends notice to the owner. *Conquest*, 788 S.W.2d at 695; *Liland*, 731 S.W.2d at 112. And the cases read together would not allow a clerical error to be corrected under section 25.25 if notice of the increased appraisal was sent and received. *See Conquest*, 788 S.W.2d at 695; *Liland*, 731 S.W.2d at 112.

But Northeast and RTC assert that the legislature amended the Texas Property Tax Code to include a definition of clerical error in direct response to *Conquest*. And section 1.04(18) now gives two definitions of clerical error, which must be read disjunctively because of the "or" between subsections (A) and (B). They argue that Levin's mistake in completing the application is an error that is or results from a mistake or failure in writing or copying. Thus, appellees contend that the mistake in the application, which exhibited itself on the appraisal roll, is a clerical error under the definition provided in section 1.04(18)(A).

■ In construing a statute a court may consider, among other things, the object sought to be obtained, circumstances under which the statute was enacted, legislative history, and consequences of a particular construction. TEX.GOV'T CODE ANN. § 311.-023 (Vernon 1988). The primary goal of statutory construction is to effectuate the intent of the legislature. *Harris County*

*Dist. Attorney's Office v. J.T.S.,* 807 S.W.2d 572, 574 (Tex.1991); *City of Carrollton v. Popescu,* 806 S.W.2d 268, 272 (Tex.App.—Dallas 1991, no writ).

The legislative bill analysis of section 1.04(18) simply states that the purpose of the bill is to clarify the meaning of clerical error since there is no uniform definition of clerical error and interpretation is left to local appraisal review boards. HOUSE COMM. ON WAYS AND MEANS, BILL ANALYSIS, TEX. S.B. 514, 72nd Leg., R.S. (1991). The bill analysis does not indicate that the legislature intended to expand previous definitions of clerical error. Nothing in the legislative history suggests that the clerical error definition includes property owner errors. If the legislature's goal was to broaden the definition of clerical error, we believe it would have specifically stated that clerical errors are not limited to those errors made by the decision-making body.

Subsection (B) includes the language that a clerical error "does not include an error that is or results from a mistake in judgment or reasoning in the making of the finding or determination." TEX.TAX CODE ANN. § 1.04(18)(B) (Vernon 1992). If we accept appellees' construction, then the well-established rule that a clerical error is nondiscretionary would not apply to subsection (A).

■ Instead, we believe that section 1.04(18) refers to two types of clerical errors that the chief appraiser, the appraisal review board, or the assessor may make. Subsection (A) addresses errors of commission, while subsection (B) is directed at errors of omission. The legislature intended to clarify the meaning of clerical error, not to create a new definition. The definition of clerical error adopted by the legislature is essentially the same as the definition in *Conquest. See Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries,* 844 S.W.2d 857, 859 (Tex.App.—Texarkana 1992, writ denied) (court held that section 1.04(18) confirmed the *Conquest* definition of clerical error). The two subsections should be read together. Courts should interpret the words "and" and "or" as synonymous when strict grammatical

construction would frustrate legislative intent. *See Bruce v. First Fed. Sav. & Loan Ass'n,* 837 F.2d 712, 715 (5th Cir.1988); *Board of Ins. Comm'rs v. Guardian Life Ins. Co.,* 142 Tex. 630, 635, 180 S.W.2d 906, 908 (1944); *Neighborhood Comm. on Lead Pollution v. Board of Adjustment,* 728 S.W.2d 64, 68 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).

If the appraisal district denies a property owner's application for open-space land appraisal, notice must be sent to the owner with an explanation of the reason for denial and the procedures for protesting the action. TEX.TAX CODE ANN. § 23.57(d) (Vernon 1992). CCAD complied with this requirement. Chapter 41 sets forth protest procedures the property owner may use if he believes the appraisal district's determination is incorrect because of a mistake he committed. *See* TEX.TAX CODE ANN. §§ 41.01–41.47 (Vernon 1992). To allow a property owner to rely on section 25.25(c)(1) to correct the appraisal roll because of a mistake he made would in effect give him two identical remedies.

■ We hold that the legislature intended section 25.25(c)(1) to allow for the correction of clerical errors generated by the appraisal district. There is no indication in either the language of section 1.04(18) or prior case law that section 25.25(c)(1) was enacted so property owners that supplied the appraisal district with mistaken information could revise the appraisal district's decisions, which are correctly recorded in the appraisal roll.

■ The appraisal roll reflects CCAD's determination that the property did not qualify for open-space appraisal because Northeast's application plainly stated the property was owned by a nonresident alien. CCAD's action caused the appraisal roll to reflect an appraisal value that resulted from judgment and reasoning, not a clerical error. Therefore, we hold that appellees cannot use section 25.25(c)(1) to correct the appraisal roll.

CCAD asserts that section 25.25(c)(3), which provides that the appraisal roll can be corrected for property listed in a form

that does not exist, does not apply to the listing of property at market value instead of open-space land. CCAD contends that section 25.25(c)(3) should be construed to mean that only nonexistent property may be removed from the appraisal roll. CCAD's argument is that the words "in the form or at the location" merely explain the words "inclusion of property that does not exist."

Appellees contend that the property does not exist in the form described in the appraisal roll because it is listed as property not qualifying for open-space land appraisal. They argue that the property's use is described incorrectly and, therefore, the form does not exist. Appellees urge this Court not to substitute the term "nonexistent property" for the legislature's language of "property that does not exist in the form or at the location." Appellees argue that if we read section 25.25(c)(3) to mean nonexistent property, then the phrase "in the form or at the location" becomes surplusage. If the legislature meant nonexistent property, appellees contend section 25.25(c)(3) would simply say "the inclusion of nonexistent property."

 The Texas Property Tax Code does not provide a definition or explanation of what is meant by "the inclusion of property that does not exist in the form or at the location described in the appraisal roll." Although nonexistent property certainly is included by the language of section 25.-25(c)(3), we are not inclined to limit the statutory language to mean only nonexistent property. "Form" is defined as the "shape and structure of something as distinguished from its substance." THE AMERICAN HERITAGE DICTIONARY 525 (2d ed. 1985). And "form" refers "to the distinctive appearance of a thing as determined by its visible lines." *Id.* We believe the term "form" in section 25.25(c)(3) does not refer to the use of the property but to the physical description of the property, which would include boundaries, shape, or configuration of property.

The evidence does not show, nor do appellees contend, that the property does not exist at the described location. The evidence showed that the property's use was described incorrectly. An appraisal district's determination of a property's use must be challenged pursuant to Chapter 41. Section 25.25(c)(3) does not function to allow the reconsideration of CCAD's denial of Northeast's application. Appellees cannot use section 25.25(c)(3) to change the appraisal roll.

We hold that, as a matter of law, the 1989 appraisal roll does not contain a clerical error with respect to appellees' property, nor does it include appellees' property in a form or location that does not exist. The trial court erred when it ordered summary judgment in favor of appellees and denied CCAD's motion for summary judgment. We reverse the judgment of the trial court and render judgment that Northeast and RTC are not entitled to have the 1989 appraisal roll changed.