**In re EL TROPICANO, INC., Debtor.**

**EL TROPICANO, INC., Plaintiff,**

v.

**Rudy A. GARZA, Tax Assessor–Collector, Quentin Porter Tax Assessor–Collector and Bexar Appraisal District, Defendants.**

Bankruptcy No. 89–53623–C.
Adv. No. 90–5260.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

May 13, 1991.

William R. Davis, Jr., Law Office of Garvin P. Stryker, Robert J. Myers, Willis, Hickey, Hougham & Myers, San Antonio, Tex., for plaintiff.

Patrick C. Bernal, Heard, Goggan, Blair & Williams, San Antonio, Tex., for Porter & Garza.

Scott Breen, Dale Wilson, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, Tex., for Bexar County.

## MEMORANDUM DECISION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration this complaint by the Debtor to determine tax liability, filed against Defendants Rudy A.

Garza, Tax Assessor–Collector for Bexar County, Texas, Quentin Porter, Tax Assessor–Collector for the City of San Antonio, Texas, and Bexar Appraisal District. Upon consideration of the stipulations, the arguments of counsel and the pleadings in the matter, the court enters this its decision disposing of the matter.

## JURISDICTION

This court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. § 505 and may enter a final order with respect thereto. 28 U.S.C. § 157(c)(2). This matter is core proceeding. 28 U.S.C. § 157(b)(2)(A).

## PROCEDURAL AND FACTUAL BACKGROUND

El Tropicano, Inc. ("Debtor") filed a voluntary chapter 11 petition in bankruptcy on November 15, 1989. On July 31, 1990 the estate's primary asset, a hotel facility in San Antonio, was sold to Karim Hospitality, Inc. for $8,538,500.00, shortly before confirmation of the Debtor's Plan of Reorganization on August 6, 1990.

Debtor by this motion is seeking a redetermination of its *ad valorem* tax liability for the tax years 1987, 1988 and 1989 based upon Section 505(a) of the Bankruptcy Code. Debtor asserts that the taxable value of the hotel for 1987 and 1988 should have been no more than $6,400,000.00. Debtor seeks to set the taxable value for 1989 at the fair market value of the property as of that time. If the Debtor is successful, the taxing units will have to return to the Debtor's estate "excess taxes and

assessments" for the previous years in question.

The subject property consists of the hotel facility (the El Tropicano Hotel) as well as ancillary properties used for parking.[1]

For the tax year 1987, Debtor, with the aid of a tax representation firm, protested the initial Bexar Appraisal District valuation of the principal account and subsequently reached a negotiated settlement with the taxing authorities as to the valuation for that year, agreed to be $8,693,000.00.

For the tax year 1988, Debtor, again with the aid of a tax representation firm, again protested the initial Bexar Appraisal District valuation of the principal account and again reached a negotiated settlement as to the valuation, this time agreed to be $8,500,000.00.

For the tax year 1989, Debtor, still with the aid of a tax representation firm, once again protested the Bexar Appraisal District initial valuation of the principal account before the Bexar Appraisal Review Board, a three-member administrative review panel. The Board decided on a valuation of $7,930,000.00, after a contested hearing.

It has been stipulated that there were additional remedies available to the Debtor in each of the tax years which were not pursued.[2] El Tropicano did not seek judicial review of any of the appraised values for 1987, 1988 or 1989, and the time deadline under Texas law for seeking any judicial review had expired prior to this bankruptcy case being filed.[3]

---

1. The valuation and assessments from previous years were based upon three separate legal descriptions. The valuation of the parking facilities totaled no more than 8% of the total valuation in any given year. Only the valuation for the hotel facility ("principal account/subject property") was ever contested; the valuations for the parking facilities were subsumed into the discussions over the principal account. As neither of the parties felt this segregation was an issue, neither does the court. The resolution of the issue in this decision applies to the entire property, including the parking facilities.

2. Texas *ad valorem* taxation is governed by the Texas Property Tax Code, TEX.TAX CODE ANN.

(Vernon 1982 & Supp.1991). The Code contains a comprehensive statutory scheme for the determination, appeal and certification of property tax appraisals, including specific provisions for administrative and judicial review.

3. Thus, this case is distinguished from the situations in which a debtor still has time to pursue remedies under the state taxation valuation scheme as of the commencement of the case, or in which an appeal is pending at the time. *See In re TMI Growth Properties 82,* 109 B.R. 403 (Bankr.N.D.Cal.1990); *In re Lipetzky,* 64 B.R. 431 (Bankr.D.Mont.1986); *In re Electronic Theatre Restaurants, Inc.,* 85 B.R. 45 (Bankr.N.D. Ohio 1988). In such circumstances, the legal

Debtor contends that for all three tax years the valuations were not "contested before and adjudicated by a judicial or administrative tribunal...." within the meaning of the bankruptcy statute and that, therefore, this court has jurisdiction to reexamine such valuations pursuant to Section 505(a).

Defendants counter that the Bexar Appraisal Review Board is a "quasi-judicial body" before which the 1989 tax valuation was "contested before and adjudicated," precluding this court from exercising jurisdiction over the tax determination by virtue of Section 505(a)(2)(A). Defendants further contend that the settlements agreements from 1987 and 1988 should operate as some form of estoppel against the Debtor. There is also the suggestion that, apart from Section 505, this court may be precluded from redetermining tax liabilities in all events by virtue of 28 U.S.C. § 1341.

## ANALYSIS

The resolution of this case turns upon the construction of Section 505(a)(2), which provides, in relevant part, that:

> (a) Except as provided in paragraph (2) of this subsection, the court *may* determine the amount or legality of any tax, fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal ...
>
> .    .    .    .    .
>
> (2) The court *may not* so determine ... the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was *contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before* the commencement of the case under this title...."

11 U.S.C. § 505(a)(2)(A) (emphasis added). The analysis is slightly different for tax years 1987 and 1988 on the one hand, for which settlement agreements were reached

issue at the center of this case (namely, the application of Section 505(a)(2)) does not come

prior to adjudication, and for tax year 1989, for which an adjudication was had before an administrative tribunal (though no judicial review was either sought or obtained).

Initially, the court will dispose of the "jurisdictional" argument raised by the defendants, then will turn to the substantive question of how Section 505(a)(2)(A) is to be interpreted. Finally, the court will address the discretionary review question suggested by the language of subsection (a)(1).

### A. "Jurisdiction" to redetermine tax liability.

■ Defendants first maintain that this court lacks the subject matter jurisdiction to reexamine the taxes assessed in prior years, based on Section 1341 of Title 28, which provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Despite this general proscription, Section 505 of Title 11 specifically grants the district court (and by virtue of Section 157(a) of Title 28, the bankruptcy court) jurisdiction in a bankruptcy case to determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed and whether or not paid including any right of the estate to a tax refund. "[S]ection 1341 has been held not to divest bankruptcy courts of their specifically granted power to adjudicate state tax assessments." *Carrollton–Farmers Branch v. Johnson & Cravens*, 858 F.2d 1010, 1014 (5th Cir. 1988), *modified*, 867 F.2d 1517, *vacated on other grounds*, 889 F.2d 571 (1989); *City Vending of Muskogee v. Oklahoma Tax Comm'n*, 898 F.2d 122, 123 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990); *see Adams v. State of Indiana*, 795 F.2d 27, 29 (7th Cir.1986).

■ Defendants' assertion that Section 505(a)(2)(A) itself operates as a juris-

into play.

dictional limitation is also incorrect, as this court's jurisdiction is defined not by Title 11 but by Title 28. The court clearly has *jurisdiction* to determine whether the prerequisites outlined in Section 505 have been satisfied, because district courts have original subject matter jurisdiction over "all civil proceedings arising under Title 11, ...," including, of course, matters arising under Section 505(a)(2)(A). 28 U.S.C. § 1334(a). Section 157(a) of Title 28 in turn permits the reference of all matters over which the district court has original jurisdiction to the bankruptcy courts. 28 U.S.C. § 157(a).

Section 505(a)(2)(A), far from further defining the court's jurisdiction, merely defines the extent of the relief available to the debtor or trustee under Title 11, affording the defendants a *de facto* affirmative defense which they have the burden to raise. *See In re Frusher,* 124 B.R. 331, 333–34 (D.Kan.1991) (whether debtor is a farmer is an affirmative defense, and does not go to the court's subject matter jurisdiction to decide whether an involuntary petition should be granted). If these defendants had failed to timely raise the issue, they would not have had the right to bring it up at a later time, as they would an attack on the subject matter jurisdiction of the court.[4]

Section 505(a)(2)(A), is not a jurisdictional bar but rather an affirmative defensive, requiring us to turn to the merits.

B. *Tax years 1987 and 1988—the settlement agreements.*

█ In 1987 and 1988, the valuation of the subject property (and the ultimate tax assessed as a direct function thereof) was reached by a negotiated settlement agreement. The issue is whether the resulting tax amounts for these two years count as having been "contested before and adjudicated by an administrative or judicial tribunal of competent jurisdiction" within the

meaning of Section 505(a)(2)(A).[5] Should settlement agreements count as an "adjudication" for purposes of Section 505(a)(2)(A)?

█ "Settlement agreements have always been a favored means of resolving disputes. When fairly arrived at and properly entered into, they are generally viewed as binding, final, and conclusive of rights as a judgment." *Thomas v. State of Louisiana,* 534 F.2d 613, 615 (5th Cir.1976); *Rodriguez v. Via Metropolitan Transit System,* 802 F.2d 126, 129 (5th Cir.1986); *Bostik Foundry v. Lindberg, A Div. of Sola Basic,* 797 F.2d 280, 283 (6th Cir. 1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 953, 93 L.Ed.2d 1002 (1987) ("[o]nce concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment and the actual merits of the antecedent claims will not thereafter be examined"); *Terra Nova Ins. Co. LTD. v. 900 Bar, Inc.,* 887 F.2d 1213, 1227 (3rd Cir.1989) ("[w]here identical cases between identical parties proceed in separate fora, *resolution* of one—even *by settlement*—necessarily *precludes litigation* of the other") (emphasis added); *In re Back Bay Restorations, Inc.,* 118 B.R. 166, 170 (Bankr.D.Mass.1990) ("... the arms length settlement agreement meets the requirements of being contested and adjudicated"). This debtor's complaint invites courts to unwind the results of previous tax settlement agreements by couching them as "noncontested" and "non-adjudicated" matters which, by way of Section 505, could be revisited in bankruptcy. This court respectfully declines the invitation.

In both 1987 and 1988 the Debtor, with the aid of a tax representation firm, entered into what to all appearances were good faith negotiations to resolve contested valuation disputes. The Debtor had the property appraised and used the appraisal

---

4. Imprecision in this area on the part of parties and courts leads only to confusion and tends to undermine the finality of bankruptcy court decisions. The mere fact that the court in question may be an Article I court does not elevate every affirmative defense to a limitation on the court's subject matter jurisdiction.

5. "[t]he court *may not* so determine...." The court would have no discretion in such an instance, mandating dismissal pursuant to Rule 12(b)(6). *See City of Amarillo v. Eakens,* 399 F.2d 541 (5th Cir.1968), *cert. denied,* 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969).

in its negotiations. There is no indication that these settlement discussions were conducted in an inept or incompetent fashion, or that they were in any way unfair, inequitable or the result of any pressured or superior bargaining position. To the contrary, these settlement agreements were fairly arrived at and properly entered into and resolved what would otherwise have had to have been litigated.

The pre-petition settlement agreements between the Debtor and Bexar Appraisal District for these tax years were, by the standards used in other kinds of litigation, "contested before and adjudicated by a judicial or administrative tribunal...." *Thomas*, 534 F.2d at 615; *Rodriguez*, 802 F.2d at 129; *Bostik Foundry*, 797 F.2d at 283; *Terra Nova Ins. Co. LTD.*, 887 F.2d at 1213; *In re Back Bay Restorations, Inc.*, 118 B.R. at 166. These settlements should count as an adjudication on the merits just as surely as would such settlements in virtually any other context, and nothing in Section 505(a)(2) suggests that a contrary reading is either necessary or appropriate. 11 U.S.C. § 505(a)(2)(A).[6]

Accordingly, this court declines to revisit tax years 1987 and 1988, finding that the negotiated settlements count as "adjudications" within the meaning of Section 505(a)(2)(A).

C. *Tax year 1989—the administrative tribunal contest.*

The next issue is whether the 1989 valuation placed on the property by the Bexar Appraisal Review Board after a contested hearing counts as a matter "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." *See* 11 U.S.C. 505(a)(2)(A). Our focus shifts from whether there was a contest to whether having a contest before only an administrative body when a level of

*de novo* judicial review has yet to be exhausted will count as an adjudication under the statute.

A brief review of the administrative and judicial review procedure under Texas law is helpful to this analysis. Texas *ad valorem* taxation is governed by the Texas Property Tax Code, TEX.TAX CODE ANN. (Vernon 1982 & Supp.1991). The Tax Code contains a comprehensive statutory scheme for the determination, appeal and certification of property tax appraisals, including specific provisions for both administrative and judicial review. Initially, an appraised value is set by the appraisal district. Administrative review of the value set is available before appraisal review boards, which hold hearings on protests by property owners. Generally, to obtain such a hearing, a property owner must file a written protest with the review board by a date shortly after the date the notice of appraised value is delivered to the property owner. Tax Code, § 41.44. The property owner can appear before the appraisal review board either in person or by affidavit and may offer evidence or argument in support of the protest.

If the property owner is not satisfied with the appraisal review board's determination, the property owner may "appeal" the board's decision to the district court. Tax Code, § 42.21(a). The review conducted by the district court is not so much an appeal as it is a *de novo* trial. Tax Code, § 42.23. Prior actions taken by the appraisal review board are not even admissable at this trial, and either party is entitled to a jury. Tax Code, § 42.23. To maintain this suit, the taxpayer must pay at least the amount of tax which was assessed in the preceding year. Tax Code, § 42.08.

The Supreme Court has stated that "... [w]hen an administrative agency is

6. If anything, the statute seems to be designed to at least discourage, if not prevent, attempts to use the bankruptcy process to subvert the legitimate exercise of the traditional power of the state to control the taxation of its citizenry. *See Arkansas Corp. Comm. v. Thompson*, 313 U.S. 132, 145, 61 S.Ct. 888, 892, 85 L.Ed. 1244 (1941) ("[T]here is nothing in the history of bankruptcy or reorganization legislation to support the theo- ry that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies"). Certainly a rule which protects fully litigated tax contests but leaves negotiated settlements vulnerable to being set aside in bankruptcy would only encourage expensive litigation by state taxing authorities. That is neither good law nor good policy.

acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." [7] *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *Quinones Candelario v. Postmaster General of U.S.,* 906 F.2d 798, 801 (1st Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct 1307, 113 L.Ed.2d 242 (1991); *Texas Employers' Ins. Ass'n. v. Jackson,* 820 F.2d 1406, 1416 (5th Cir.1987); *see also University of Tennessee v. Elliot,* 478 U.S. 788, 797–98, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635 (1986). "When an administrative proceeding meets the requirements set forth in *Utah Construction,* it may rise to the level of a 'judicial proceeding' entitled to preclusive effect by Section 1738." *Plaine v. McCabe,* 790 F.2d 742, 748 (9th Cir.1986) (referring to the provision of Title 28 which requires federal courts to accord to state court judgments the same full faith and credit they would have in the states' own courts by applying the preclusion law of the state in which the judgment was rendered); *see also Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (to the same effect). Thus, a federal court should normally give preclusive effect to a state administrative decision if the state court would itself give that decision preclusive effect, absent some special circumstance. 28 U.S.C. § 1738; [8] *Plaine,* 790 F.2d at 748, n. 13.

■ Texas law holds that the assessment of property for tax purposes serves a quasi-judicial function. *Friedrich Air Conditioning and Refrigeration Co. v. Bexar Appraisal District,* 762 S.W.2d 763, 770 (Tex.App.—San Antonio 1988, no writ). Appraisal review boards also serve a quasi-judicial function, according to Texas case

law. *Matagorda County Appraisal District v. Conquest Exploration Co.,* 788 S.W.2d 687, 694 (Tex.App.—Corpus Christi 1990, no writ). When an administrative action is judicial or *quasi-judicial,* it is appropriately given res judicata effect in Texas. *Bryant v. L.H. Moore Canning Co.,* 509 S.W.2d 432, 434 (Tex.Civ.App.—Corpus Christi 1974, no writ) (emphasis added), *cert. denied, Pope v. Texas,* 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 74 (1974). They should enjoy a similar preclusive effect in federal courts per the directive of Section 1738 of Title 28.

■ The parties agree that the time for appealing the 1989 valuation expired prior to the filing of the bankruptcy petition. The debtor did not follow the exclusive remedies set out in the Tax Code for challenging the administrative determination made by the appraisal review board. *Matagorda,* 788 S.W.2d at 692. Failure to follow these rules precludes judicial review, i.e. district court review, of the underlying decision, according to Texas law. *Texas National Bank of Baytown v. Harris County,* 765 S.W.2d 823 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Appraisal Review Board v. International Church of Foursquare Gospel,* 719 S.W.2d 160 (Tex.1986); *Keggereis v. Dallas Cent. Appraisal Dist.,* 749 S.W.2d 516, 519 (Tex. App.—Dallas 1988, no writ) (failure to comply with administrative procedures of the Code constitutes a failure to exhaust administrative remedies and precludes their cause of action in the district court); Tax Code, §§ 42.21(a), 42.09 (Vernon Supp. 1991). Debtor's argument that it did not exhaust all remedies available under state law, so that there has been "no final adjudication", is not correct. Debtor merely surrendered the right to a *de novo* review before the district court when the relevant time for appeal expired, rendering the property valuation made by the Bexar Apprais-

---

7. Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores· v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981).

8. The section provides, in relevant part, that "[J]udicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738.

al Review Board (and the resulting tax assessed) final under Texas law. *Texas National Bank of Baytown*, 765 S.W.2d at 826; *Keggereis*, 749 S.W.2d at 519; *but see City Vending of Muskogee v. Oklahoma Tax Comm'n*, 898 F.2d 122, 125 (10th Cir. 1990), *cert. denied*, — U.S. —, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990) (discussing failure to invoke the appropriate state remedies in a timely fashion and concluding that failure to exhaust not relevant in evaluating whether bankruptcy court should invoke jurisdiction). If such valuations are final under Texas law, they should be final under federal law as well, and ought to count as matters that were "contested before and adjudicated by a judicial *or administrative* tribunal." 11 U.S.C. § 505(a)(2)(A) (emphasis added); 28 U.S.C. § 1738; *Plaine*, 790 F.2d at 748, n. 13; *Utah Construction*, 384 U.S. at 422, 86 S.Ct. at 1560; *Quinones Candelario*, 906 F.2d at 801; *Texas Employers Ins. Ass'n.*, 820 F.2d at 1416.

It should further be noted that, in *Utah Construction*, the Supreme Court found relevant to its analysis that "both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings" in the administrative proceeding. 384 U.S. at 422, 86 S.Ct. at 1560. In our case, the Debtor had "an opportunity to appear [and] to offer evidence or argument" before the Bexar Appraisal Review Board. Tax Code, § 41.45(b). The Debtor also had the right to appeal this decision to the district court, where it could have obtained a *de novo* review before judge and jury, had it so desired. Tax Code, §§ 42.-21(a), 42.23. The Debtor here thus had the *full and fair opportunity* to both argue its version of the facts, and to seek court review of any adverse findings, thus satisfying the standards of *Utah Construction.* Regardless whether the Debtor in fact exhausted its remedies, the decision entered by the Bexar Appraisal Review Board, in light of the concerns discussed in *Utah Construction*, counts as an adjudication within the meaning of Section 505(a)(2).

Finally (and perhaps most pointedly), Debtor's interpretation focuses on the notion "adjudicated," when perhaps the more telling phrase in the statute is the reference to adjudication "before an administrative or judicial tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(2)(A). Congress appears to have used a broad expression in order to encompass the variety of mechanisms for tax adjudication which might be found throughout the nation. Some states might have only administrative tribunals, some only judicial forums, some both. Some states might give *de novo* review before a court, while others might give only appellate review. The generic language of the statute reflects an apparent congressional intent to defer to the tax adjudication mechanism of a given state, whatever it might be, so long as it results in *an* adjudication.[9]

Had Congress intended to insulate only those adjudications qualifying as complete exhaustions of all levels of review available in a given state, it would seem to have been far easier to say that only matters which have been *"fully* adjudicated" are protected from further examination by the bankruptcy courts. No further reference to the *kinds of tribunals* before which such adjudication had been accomplished would have been needed. The specific inclusion of "administrative" tribunals in Section 505(a)(2)(A) seems to be a congressional recognition that even adjudication at that level alone is an adjudication which Congress believes the federal courts have no business revisiting.

### D. *Discretionary review.*

Even were the court to agree with the Debtor on the court's authority to

---

**9.** This reading is also consistent both with prior case law and other closely related statutes. *See Arkansas Corp. Comm. v. Thompson*, 313 U.S. 132, 145, 61 S.Ct. 888, 892, 85 L.Ed. 1244 (1941) ("[T]here is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies"); 28 U.S.C. § 1341 ("the district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state").

re-litigate these tax years, the court would not agree on the propriety of such a course. Section 505(a) specifies that "the court *may* determine the amount or legality of any tax...." 11 U.S.C. § 505(a)(1) (emphasis added). This language indicates that the court's authority to determine a debtor's tax liability is discretionary. *In re Galvano*, 116 B.R. 367, 373 (Bankr.E.D.N.Y.1990). Here, as in *Galvano*, "[d]ebtor's motion is nothing more than attempt to gain a second bite of the apple through [the] request that this court redetermine tax liability which was previously contested...." *In re Galvano*, 116 B.R. at 373.

The Fifth Circuit has described the concerns which should animate the exercise of this statute:

> "[D]ebtors financially involved are not always vigilant in the exercise of their rights to challenge tax claims or secure abatements; their management may be inept, incompetent, uninterested, or dishonest; indeed, they may be under pressure to accept over-assessments which may aid in maintaining a credit standing or commercial standing."

*City of Amarillo*, 399 F.2d at 544. None of these concerns are present in the case at bar. The Debtor here was particularly diligent, hiring a tax firm to help it contest the tax assessment in all three years. Debtor even had the property appraised and used the appraisal in its negotiations. The management of the Debtor does not appear to have suffered from ineptitude, incompetence, dishonesty or a lack of interest. In fact, Debtor himself valued the property at $12,500,000.00 in its May 3, 1990 Disclosure Statement, nearly $4 million higher that the highest value placed on the property by the Appraisal Board.

"In enacting § 505, Congress was primarily concerned with protecting creditors from the disposition of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest." *In re Northwest Beverage, Inc.*, 46 B.R. 631, 635 (Bankr.N.D.Ill.1985); *City of Amarillo*, 399 F.2d at 544 ("the amendment [Section 505] ... serves to protect creditors of the bankrupt...."). The primary intended beneficiaries of Section 505, thus, are an estate's unsecured creditors, not the debtor or its principals. In this case, creditors' claims, other than the taxing authorities, have been paid in full out of the proceeds of the sale of the property. Consequently, successful litigation of this case would inure solely to the benefit of El Tropicano, not to any creditor. Any extraordinary remedy should be used judiciously. When the intended beneficiaries of the remedy in question will realize no particular benefit from its use, much of the rationale for its employment disappears, and with it this court's willingness to exercise the discretion afforded by the statute.

Thus, this court would decline to redetermine the valuations reached by negotiated settlement for the tax years 1987 and 1988 and the valuation reached by the three member Bexar Appraisal Review Board for the tax year 1989, even if it otherwise could.

## CONCLUSION

Judgment will be entered consistent with this opinion. Movant is requested to submit the appropriate form of order within ten days from the entry of this decision.