**In re SUPER VAN, INC., Debtor.**

**Bankruptcy No. 92–53504–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Oct. 12, 1993.

---

Steven G. Cennamo, San Antonio, TX, for debtor.

Andrew L. Sobotka, Dallas, TX, for U.S.

Lynn Hamilton Butler, Austin, TX, for Texas Employment Com'n.

*DECISION ON MOTION OF STATE OF TEXAS TO ABSTAIN FROM HEARING DEBTOR'S MOTION FOR DETERMINATION OF AMOUNT OR LEGALITY OF TAX, FINE AND PENALTY RELATING TO TAX*

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the motion of the Texas Employment Commission to abstain from hearing debtor's motion, brought under § 505, for redetermination of amount or legality of tax, fine and penalty relating to tax. Upon consideration thereof, the court has entered its order denying the motion. This decision is entered, incident to the entry of a final judgment in this cause, to set out the rationale for the court's ruling.

## BACKGROUND

Super Van, Inc. operates a shuttle service in San Antonio, Texas, and has done so since 1987 or 1988. Super Van filed for bankruptcy September 30, 1992, under chapter 11. During the course of this bankruptcy, the debtor filed an action under § 505 of the Bankruptcy Code, for determination of the amount or legality of certain taxes owed the Internal Revenue Service and the Texas Employment Commission. The TEC has moved this court to abstain from hearing the debtor's motion.

The gravamen of the debtor's § 505 motion requires the court to determine whether, for the applicable period, the debtor's drivers were employees or independent contractors, for purposes of the Texas Unemployment Compensation Act. *See* Texas Unemployment Compensation Act, Section 19(g)(1), *codified at* TEX.REV.CIV.STAT.ANN., art. 5221b–17(g)(1) (Vernon Supp.1993). The motion also seeks a determination of federal unemployment tax liability, and the same factual issue must be resolved there. All parties agree that the law regarding whether a worker is an employee or an independent contractor is essentially the same for both Texas and federal unemployment tax liability. It is for this reason that the debtor joined both taxing entities in this single action. Only the State of Texas has sought abstention. The United States has not.

The TEC argues that the debtor has already contested this very issue before in TEC administrative hearings.[1] Furthermore, the TEC argues that abstention is appropriate in order to preserve the state's interest in uniformity of assessment. *See In re Fairchild Aircraft Corp.,* 124 B.R. 488, 491 (Bankr.W.D.Tex.1991). Acknowledging that mandatory abstention is probably not apposite, the TEC urges this court to apply discretionary abstention. *See* 28 U.S.C. § 1334(c)(1); *see also In re Cain,* 142 B.R. 785, 789 (W.D.Tex.1992); *In re Huddleston,* 107 B.R. 102, 103 (Bankr.E.D.La.1989); *In re Hunt,* 95 B.R. 442, 447–48 (Bankr.N.D.Tex. 1989); *but see In re Wells Properties, Inc.,* 102 B.R. 685, 692 (Bankr.N.D.Ill.1989).

## ANALYSIS

The main thrust of the TEC's argument is that *Burford* abstention applies to this case. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). TEC also argues for *Younger* abstention. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The TEC urged as well that the court should exercise the discretion, found within the body of section 505 itself, not to hear the case. *See* 11 U.S.C. § 505(a). The court *sua sponte* also considers whether abstention is required by *Thompson v. Magnolia Petroleum,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).

### I. Abstention is not compelled by *Thompson v. Magnolia Petroleum.*

■ The thrust of the TEC's argument was dictated at least in part by this court, which had indicated to the parties that the

---

1. This court, on April 8, 1993, ruled that the May 24th decision of the TEC administrative tribunal lacked the requisite finality to deprive this court of the right to itself entertain the dispute. *See* 11 U.S.C. § 505(a)(2); *In re El Tropicano, Inc.,* 128 B.R. 153 (Bankr.W.D.Tex.1991). The essential basis for that ruling was that the debtor had not been afforded the opportunity for *de novo* review of that decision by a state district court (because a state court action was pending but was dropped by the TEC and the debtor when the debtor filed bankruptcy), nor had the debtor been represented by counsel at the time. *See* discussion *infra.*

discretionary abstention provisions found in section 1334(c)(1) are but a codification of the case law on abstention developed by the Supreme Court over the last fifty years. 1 KING, COLLIER ON BANKRUPTCY, ¶ 3.01, pp. 3–71 to 3–74 (15th ed. 1991); *see Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). Said the Supreme Court in *Thompson*,

> A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration.

*Id.*, 309 U.S. at 483, 60 S.Ct. at 630.

Bankruptcy abstention seems to have followed its own track, separated from more traditional abstention case law. This is so at least partly because, under the Bankruptcy Act, the bankruptcy court's summary powers extended only to property in the estate's possession. Its plenary jurisdiction was severely circumscribed. When the Bankruptcy Code replaced the Act, it also expanded substantially the bankruptcy court's jurisdiction. The 1984 Amendments again contracted that jurisdiction, but only to the extent necessary to avoid further Article III challenges. The scope of jurisdiction under the Code today is still substantially broader than it was when Justice Black wrote *Thompson*. *See generally* 1 KING, COLLIER ON BANKRUPTCY, ¶ 1.01 *et seq.* (15th ed. 1993).

Justice Black was also the author of *Burford*, which was issued three years after *Thompson. Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). While in *Thompson* parties originally in federal court were invited to go to state court to resolve their dispute, the parties in *Burford* started in state court, until one party brought a collateral action in federal court attacking the validity of a Railroad Commission order. Given the different procedural posture, it is not surprising that Justice Black gave greater attention in *Burford* to

the interests of the State of Texas in considering the appropriateness of abstaining, for there, a federal court's jurisdiction was expressly invoked to *interfere* with the jurisdiction of the state court. In a bankruptcy case, by contrast, the federal court's jurisdiction is invoked for reasons *independent* of whatever state court proceeding might otherwise be interrupted, and simple federal preemption applies to whatever incidental conflict with state law might otherwise arise along the way.

*Thompson* does not compel abstention here. First of all, the case has limited utility today, given the substantial changes in bankruptcy law and jurisdiction since 1940. Second, the touchstone of the decision to abstain in the bankruptcy context, according to Justice Black, is "where the interests of the estate and the parties will best be served," when the particular controversy involves "unsettled questions of State property law and arising in the course of bankruptcy administration." *Id. Thompson* abstention is difficult to justify here, for the interests of the estate would *not* be served by abstention. The underlying facts to be determined will in turn determine the result for both the TEC and the IRS tax liability, as both taxing entities employ the common law test for whether an employer-employee relationship is present. *See Breaux and Daigle, Inc. v. United States*, 900 F.2d 49, 51 (5th Cir.1990); TEX.REV.CIV.STAT.ANN., art. 5221b–17(g)(1) (Vernon Supp.1993). Abstaining here could result in inconsistent factual findings, unless the IRS consented to be bound by the state court's determination (which is unlikely, given the precedent that would set and the threat to uniformity of decision that would represent for the IRS). Abstention could thus impose *two* trials on the estate (one here and one in state court), which is certainly not in the estate's best interests.

Nor are there any particular unsettled questions of state property law at issue. Obviously, we need not read *Thompson* to be restricted to state *property law* issues, though that is the precise wording found in that case, but this case presents no other state law issues in the sort of disarray that the Supreme Court found in *Thompson*. In-

188

deed, all parties have acknowledged that the state law issues involved here are fairly well settled. The State's primary fear seems to be that a body of case law will develop in the bankruptcy courts that may "skew" the body of law already being developed in state courts. That alone, even if it were true,[2] would not be enough to satisfy the *Thompson* standard. Thus, *Thompson* does not support the position of TEC urged in this case.

## II. Abstention is not compelled by *Burford*.

■ TEC's *Burford* abstention argument is premised on the notion that the TEC administrative scheme involved here has the same intricacy and importance as did the Railroad Commission's oil and gas regulatory scheme at issue in *Burford*, and that the State of Texas has instituted a centralized system of judicial review of commission orders which permit state courts (particularly the courts of Travis County, Texas) to acquire a specialized knowledge of the regulations. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Federal court jurisdiction invoked in such a context, goes the argument, could only lead to the same sort of delays, misunderstandings of local law, and needless federal conflict with

state policy as were found likely to occur in *Burford*. Thus, TEC says that the court should abstain under the *Burford* abstention doctrine.

The argument misses the mark because it fails to appreciate the true target of *Burford* abstention. In *Burford*, the plaintiff sought equitable intervention (by way of a federal injunction) to prevent or undo the issuance of a state oil drilling permit, premising subject matter jurisdiction on diversity of citizenship. Since that time, the Supreme Court has actually pared down the breadth of *Burford* abstention, in recognition of the principles first voiced by Justice Frankfurter in his dissent.[3] The Supreme Court recently summarized its current understanding of the *Burford* abstention doctrine this way:

Where timely and adequate state court review is available, a

> federal court *sitting in equity* must *decline to interfere* with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts

---

2. Even though the State of Texas gives the TEC the authority to promulgate uniform rules, regulations and procedures, and gives that entity the right to conduct hearings in accordance with those rules, there is nothing in Texas law which makes that grant of authority *exclusive*. Tex.Rev. Civ.Stat.Ann., art. 5221b–9 (Vernon Supp.1993).

3. Said Justice Frankfurter,

> To deny a suitor access to a federal district court under the circumstances of this case is to disregard a duty enjoined by Congress and made manifest by the whole history of the jurisdiction of the United States courts based upon diversity of citizenship between parties.... [T]he basic premise of federal jurisdiction based upon diversity of the parties' citizenship is that the federal courts should afford remedies which are coextensive with rights created by state law and enforceable in state courts.
> Where the controlling state law is so undefined that a federal court attempting to apply such law would be groping utterly in the dark— where "no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination,"

[quoting [*Railroad Commission v.*] *Pullman* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)]—a court of equity may "avoid the waste of a tentative decision." ... Under such circumstances it was an affirmation and not a denial of federal jurisdiction in each those cases [*Pullman* and *City of Chicago v. Fieldcrest Dairies*, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942)] for the district court to hold the bill pending a seasonable determination of the local issues in a proceeding to be brought in the state courts....
... The duty of the judiciary is to exercise the jurisdiction which Congress has conferred. What the Court is doing today I might wholeheartedly approve if it were done by Congress. But I cannot justify translation of the circumstance of my membership on this Court into an opportunity of writing my private view of legislative policy into law ...
*Burford v. Sun Oil Co.*, 319 U.S. at 336–37, 338–39, 348, 63 S.Ct. at 1109, 1110, 1114, 86 L.Ed. 1355 (1942) (Frankfurter, J., dissenting); *see Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984).

to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. United States, supra,* 424 U.S. [800], at 814, 96 S.Ct. [1236], at 1245, 47 L.Ed.2d 483 (1976).

*New Orleans Public Serv. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1988) (emphasis added). It is when a federal court is asked to *intervene,* to *interrupt,* by exercising its equitable, injunctive powers, that *Burford* abstention draws a line. Adds the court in *New Orleans,*

> While *Burford* is concerned with protecting complex state administrative processes from *undue* federal *interference,* it does not require abstention whenever there exists such a process, or even in all cases where there is a "potential for conflict" with state regulatory law or policy.

*Id.* (citing *Colorado River Water Conservation Dist.*).

We must balance these comments against what the Court says about the "virtually unflagging" obligation of federal courts to adjudicate claims within their jurisdiction. *Id.,* citing *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988):

> Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred.... "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens v. Virginia,* 6 Wheat. 264, 404, 5 L.Ed. 257 (1821).... Underlying these assertions is the undisputed constitutional principle that Congress, and not the judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds. *Kline v. Burke Construction Co.,* 260 U.S. 226, 234, 43 S.Ct. 79, 83, 67 L.Ed. 226 (1922).... We have carefully defined ... the areas in which ... "abstention" is permissible, and it remains " 'the exception, not the rule.' " *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984),

quoting *Colorado River Water Conservation Dist. v. United States, supra,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

*New Orleans,* 491 U.S. at 358, 109 S.Ct. at 2512–13.

The invocation of section 505, in the larger context of a bankruptcy case, is a far cry from a party's bringing an injunction in federal district court to interfere with a state administrative process. Had Super Van brought an action in federal district court to challenge the TEC's rulings on, say due process grounds, then perhaps *Burford* abstention might comfortably be argued. But we have here a debtor-in-possession employing one of the many statutory rights conferred as part and parcel of the bankruptcy process, not arguably different in kind from the statutory authority to recover certain preferential transfers. The remedy is essentially an at-law remedy, expressly made available by Congress to bankruptcy estates to serve the larger function of centralizing the administration of the bankruptcy, to the extent reasonable, in one forum. If this remedy "interferes" with the state statutory scheme, it does so quite *intentionally,* i.e., it represents a studied decision on the part of *Congress* to *expressly* interfere with the states' administrative tax adjudication schemes.

If this court were to invoke *Burford* abstention to decline hearing this matter, the court would be committing the very crime described in *Cohens v. Virginia*—treason to the Constitution. Congress has already dealt with the TEC's argument, electing to confer jurisdiction notwithstanding the existence of state administrative schemes, notwithstanding their importance to the states, notwithstanding the specialized knowledge that might otherwise have been built up at the state level, notwithstanding even the potential for conflicts between state and federal enactments. Using *Burford* abstention here would mean ignoring what Congress has written; the separation of powers doctrine proscribes federal courts from ignoring what Congress has written. *See Burford, supra* 319 U.S. at 337, 63 S.Ct. at 1109 (Frankfurter, J., dissenting).

**190**

A couple of policy points are important here. First off, the dangers of inconsistency between state and federal tribunals is minimal at best. State law says that decisions made "regarding a claim for benefits under this Act" has no collateral estoppel effect. TEX.REV.CIV.STAT.ANN., art. 5221b–9(r) (Vernon Supp.1993). Also, the decisions of this court pursuant to section 505 do not appear to have any greater or lesser impact than might the same decision rendered by a Travis County court. In addition, this court is bound under *Erie v. Tompkins*[4] and under the Full Faith and Credit Act[5] to follow the laws and precedents of the State of Texas in rendering its decision, rendering substantially nugatory the TEC's fears about the development of a separate body of "federal TEC law." *See* 28 U.S.C. §§ 1738, 1739 (West pamphl. ed. (rev.) 1992).

Secondly, as the Supreme Court observed, "there is ... no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail*, 434 U.S. 374, 380, n. 5, 98 S.Ct. 673, 678, n. 5, 54 L.Ed.2d 618 (1978), cited in *New Orleans, supra.* We must remember that abstention is the exception, not the rule. *See* discussion *supra*, and cases cited therein. Here, Congress is presumed to have been fully aware of the *potential* for conflict when it enacted section 505, and to have concluded that bankruptcy policy nonetheless compelled provision for resolving tax disputes in the bankruptcy forum. Whenever a court abstains, it declines to exercise the very responsibility assigned to it by Congress. Courts ought rightly to be cautious about flaunting the legislative mandate, and even more cautious about arrogating to themselves the role of the legislature. Applying abstention to avoid exercising the

very jurisdiction expressly conferred by Congress carries with it just that danger. *See Burford, supra,* 319 U.S. at 348, 63 S.Ct. at 1113 (Frankfurter, J. dissenting); *see also Cohens v. Virginia,* 6 Wheat. 264, 404, 5 L.Ed. 257 (1821).

In fact, Congress appears already to have accommodated concerns about potential conflicts within the body of the statute itself. *See* 11 U.S.C. § 505(a)(2). Section 505 was derived from section 2A of the Bankruptcy Act, itself added in 1966. H.REP.NO. 595, 95th Cong., 1st Sess. 356 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787. The express language of section 505(a)(2) (as well as its predecessor under the Bankruptcy Act) essentially enacted an abstention principle articulated by the Supreme Court as applied to taxing authorities, while overruling the Court's broader application of abstention in such situations. *See Arkansas Corp. Commission v. Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941); *see also* H.REP. No. 595, 95th Cong., 1st Sess. 356 (1977).[6] Superimposing *Burford* over what Congress has already written would only defeat congressional intent by adding a judicial gloss of abstention onto the provisions for legislative abstention already built into the statute.

■ Congress correctly realized that *Burford* abstention is not at issue in the bankruptcy context because we do not here have the mere resort to a federal court in order to attack or evade a state regulatory scheme; rather we have the incidental ability to employ the federal forum to do what would otherwise have to be done in the state's administrative scheme, in service to the larger policies underlying the administration of the bankruptcy case. There is no "interfer-

4. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. 28 U.S.C. § 1738.

6. The Court in *Arkansas Corp. Commission* had concluded that a trustee in a railroad equity receivership could not go into a federal court sitting in bankruptcy and obtain a second bite at the apple after having lost a contest before the state commission over property taxes which had accrued during the equity receivership. Con-

gress later enacted Section 2(a) of the Bankruptcy Act, which expressly permitted a trustee in bankruptcy to do precisely what the Court had prohibited in *Arkansas Corp. Commission.* However, in so doing, Congress inserted a limitation—that tax disputes which had reached the level of finality described in *Arkansas Corp. Commission before* the bankruptcy could not be collaterally attacked under the authority of Section 2(a) of the Act *after* the bankruptcy. This language was essentially re-codified in Section 505 of the current Code.

ence," such as in *Burford*—unless one wants to argue that the *sole* purpose of filing the bankruptcy *itself* was to interfere with the state administrative process. No one has made that argument here, and it is not supported by the facts of this case in any event.[7] In all events, were a debtor to file bankruptcy solely for that reason alone, abstention would not be the proper tool to grab for; dismissal for bad faith filing would.[8]

### III. Abstention is not warranted under *Younger*.

*Younger* abstention does not apply here either, both for technical reasons and for policy reasons. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The doctrine originally cautioned federal courts from interfering (again, the notion of injunctive interference is at the base of most *Younger* abstention cases) with state criminal prosecutions, but has been extended to various civil enforcement schemes that are essentially judicial in nature. While the "judicial in nature" element is *necessary* in order to invoke *Younger* abstention, however, it is *not sufficient*. The TEC argues essentially that *Younger* abstention should apply *whenever* the state scheme in question is "judicial in nature," but that is not what the Supreme Court has held. All that the Court said in *New Orleans*, for example, is that

> [w]hile we have expanded *Younger* beyond criminal proceedings, and even beyond proceedings in courts, we have never extended it to proceedings that are not "judicial in nature."

*New Orleans*, 491 U.S. at 370, 109 S.Ct. at 2519. Again, abstention is, in general, a narrow doctrine. Said the Court in *New Orleans*,

> it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.

*Id.* at 369, 109 S.Ct. at 2518, citing *inter alia, Moore v. Sims*, 442 U.S. 415, 423 n. 8, 99 S.Ct. 2371, 2377 n. 8, 60 L.Ed.2d 994 (1979) ("we do not remotely suggest 'that every pending proceeding between a State and a federal plaintiff justifies abstention unless one of the exceptions to *Younger* applies' "). Especially in view of Congress' express determination that a federal forum should be available to bankruptcy estates for resolving tax issues, despite the availability of state processes (even state proceedings that are "judicial in nature"), one would be hard-pressed to conclude that *Younger* abstention, absent more, had any application here.

Once again, too, the express language of section 505(a) runs counter to applying *Younger* abstention in this context, for it was the intent of the drafters of the predecessor to section 505(a) to *overrule* a Supreme Court decision that prohibited rehearing of a tax dispute heard already before a state tribunal. *See* note 6 *supra*. In expressly authorizing retrials of such matters in the federal forum, Congress expressly authorized adjudication in the federal forum of an enforcement matter essentially judicial in nature. Congress recodified this enactment in 1978 with the passage of the Bankruptcy Code, some seven years *after* the Court's decision in *Younger*. We may fairly presume that Congress was aware of *Younger* when it enacted section 505(a), and a fair reading of the statute is that Congress overruled *Younger* to the extent it might otherwise apply to such actions. Section 505(a) first of all permits an action in federal court to determine the amount or legality of a tax "... whether or not contested before and adjudicated by a

---

7. The events which led up to this bankruptcy grew out of Supervan's licensing difficulties with the City of San Antonio, along with the attendant interruptions to Supervan's cash flow.

8. Consider: if the case is filed solely so that the debtor can use section 505 to evade the state's administrative scheme, then there would be no independent reason for the debtor to even *be* in bankruptcy, justifying dismissal. If the court found that there *were*, in fact, other legitimate reasons for the debtor to be invoking bankruptcy relief, then pursuit of the section 505 action would then represent a legitimate use of that section, consistent with why it was put in the Bankruptcy Code in the first place.

judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1). This portion of section 505 expressly *precludes* resort to *Younger* abstention.[9] Section 505(a)(2) then *employs* a notion of *Younger* abstention (albeit one rooted not in *Younger* but in *Arkansas Corp. Commission v. Thompson* ), prohibiting the court from making a determination if the amount or legality "was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction *before the commencement of the case ...*" 11 U.S.C. § 505(a)(2)(A).

Even if *Younger* applied as a general proposition, the facts of this case are such that it would not apply here. There is no longer an ongoing judicial proceeding which the invocation of this section 505 action would be interrupting. After the bankruptcy was filed, but long before this section 505 action was initiated, the TEC dropped the lawsuit then pending.[10] Assuming without finding that the TEC's proceedings would qualify as "judicial in nature," they are no longer "ongoing," and therefore the policy considerations that animate *Younger* abstention are not present here.

## IV. Abstention is not Warranted under Section 505(a)(2).

█ We come then to the fourth possible basis for "abstention," to wit, the provisions of section 505 itself. As earlier indicated, Congress has already built into that section certain safeguards to protect states from unwarranted federal intrusion, which essentially function like abstention.[11] For example, if the amount or legality of a tax was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case, then section 505 relief is not available. 11 U.S.C. § 505(a)(2)(A); *In re El Tropicano, Inc.*, 128 B.R. 153, 158 n. 6 (Bankr.W.D.Tex. 1991); *In re Fairchild Aircraft Corp.*, 124 B.R. 488, 491 (Bankr.W.D.Tex.1991). In this case, the amount or legality of the tax in question has not been adjudicated with the finality necessary to preclude this court's entertaining this action, because the May 24, 1992 Decision of the Texas Employment Commission's administrative tribunal lacked the requisite finality to trigger section 505(a)(2)(A). *El Tropicano, supra*, at 159. Had there been no *de novo* appeal pending as of the filing, such that the administrative ruling became the final ruling prior to bankruptcy, then, under this court's prior precedent in *Fairchild,* the matter would be final and an action under section 505 could not here be successfully pursued. *Fairchild, supra,* at 491–92. But the tax dispute was still pending as of the filing, removing the matter from the ambit of section 505(a)(2)(A). Only *final* adjudications (be they final at the administrative level or at the judicial level) can

---

9. Recall that abstention in the first instance invites a court to disregard a jurisdiction otherwise conferred on the court by Congress, in derogation of the doctrine of separation of powers. Where that jurisdiction is *express*, as here, the constitutional error in abstaining would be blatant (perhaps, in the words of *Cohens v. Virginia,* even treason).

10. This is the opposite of the situation proscribed by the Court in *New Orleans:*

[A] party may not procure federal intervention by terminating the state judicial process prematurely—forgoing the state appeal to attack the trial court's judgment in federal court. "A necessary concomitant of *Younger* is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975).

*New Orleans,* 491 U.S. at 369, 109 S.Ct. at 2518.

11. These "built-in" abstention provisions, it turns out, serve several important functions. First of all, they give clear statutory guidance to courts sitting in bankruptcy, rather than leaving abstention up to the current state of the case law. A quick review of *New Orleans* demonstrates the wisdom of this decision, as there are three different statements on the range of *Younger* abstention, and two different views on the scope of *Burford* abstention within the body of that decision alone. *See New Orleans, supra* at 371, 109 S.Ct. at 2520 (Brennan, J., concurring), at 373, 109 S.Ct. at 2521 (Rehnquist, C.J., concurring), and at 373, 109 S.Ct. at 2521 (Blackmun, J., concurring). Secondly, they assure predictability, so that parties entering bankruptcy will not suffer under the vagaries of changes in abstention law. Finally, they assure that, at least for the most part, the rules will be the same, regardless what state's or states' administrative scheme are involved.

be barred by the strictures of section 505(a)(2)(A).[12]

▮ The statute itself gives bankruptcy judges the discretion to decline to hear a tax matter, ("the court *may* determine ..."). This discretion is quite broad, permitting a court to evaluate a wide variety of factors in determining whether to proceed. The discretion is not unbridled, however. An abuse of discretion would occur in this context were a court to decline to hear a matter without having balanced the countervailing interests of the estate's right to invoke the statute in the first place against the interests of the taxing authority, and the interests of the court's own docket. The following factors weigh in on the side of hearing the matter:

1. The statute was enacted expressly to permit the bankruptcy court to sit as a Tax Court;

2. The statute furthers the centralized and speedy administration of the estate;

3. The statute is designed to avoid duplication of effort and unnecessary costs on the estate;

4. The bankruptcy court, as is any federal court, is presumed competent to apply state law statutes and principles in a manner consistent with state law precedents.

In the usual case, these factors apply, and the bankruptcy court, to be faithful to its duty to hear matters brought under the Bankruptcy Code, should hear the matter. *New Orleans, supra,* 491 U.S. at 369, 109 S.Ct. at 2518 ("... only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States"). On the other side of the ledger, the following factors might support a court's choosing not to hear the matter, employing the broad discretion of Section 505(a)(2)(A):

1. There matter in question may represent an abuse of section 505;

2. Some tax matters are sufficiently complex that deferring to another adjudica-

tor might result in a fairer and more expeditious resolution of the problem;

3. The court's docket may not permit entertaining a lengthy and complex tax dispute, while a relatively efficient mechanism for resolving the dispute is already available elsewhere;

4. The cost of pursuing the tax dispute in another forum may not be substantially different than the cost of pursuing in the bankruptcy forum;

5. Pursuing the matter in another forum will not result in multiplicity of litigation or the potential for inconsistent results.

*See generally In re Hunt,* 95 B.R. 442, 445 (Bankr.N.D.Tex.1989); *In re Galvano,* 116 B.R. 367, 372 (Bankr.E.D.N.Y.1990). At the least, however, a bankruptcy court should *not* shirk its duty to hear a matter otherwise lawfully brought under section 505 simply because it is afraid to hear a tax dispute. *That,* it seems, would be an abuse of discretion.

▮ The facts of this case are such that the discretion not to hear this matter should not be exercised. The subsidiary facts for determining whether the debtor is an employer under Article 5221b–17(g)(1) are substantially the same as those the court must look at for answering the same question with regard to the debtor's federal tax liability. Were this court to leave the matter to the state court, the possibility for inconsistent factual determinations is substantial. Obviously, the state court cannot try the federal tax question, for outside bankruptcy, the jurisdiction to resolve federal tax liability issues is essentially federal. *See* 26 U.S.C. §§ 7442, 7422, 6214.[13] Only this court can try both matters in one forum, eliminating any chance for inconsistent factual findings. *In re Fotochrome,* 346 F.Supp. 958 (S.D.N.Y. 1972) (concurrent jurisdiction in Tax Court and Bankruptcy Court). The court already has familiarity with this sort of dispute, having tried such cases before. Given the general factors which favor centralized adminis-

---

12. In addition, the debtor appeared at the TEC hearing without the benefit of counsel, raising some questions regarding whether the determination amounted to a "full and fair opportunity" for the parties to be heard. *El Tropicano, supra* at 160.

13. Any attempt to bring this matter in state court would be met with a prompt removal petition to federal court, followed by a dismissal for failure to follow Title 26 procedures.

tration of the estate, and the relatively easy factual and legal questions involved, coupled with the speed with which the issue can be reached in this forum, the balance of factors weigh in favor of hearing the matter.

There are therefore more reasons to try the case in this forum than not to. The court declines to exercise its discretion in this case not to try the matter.

### CONCLUSION

For all the foregoing reasons, the court will deny the motion of the TEC to abstain, noting along the way that, when it comes to matters brought under Section 505(a), the exclusive source for "abstention" is the discretionary authority conferred within the statute itself. That the considerations one might take into account might be similar to those employed in section 1334(c)(1) is beside the point. Section 1334(c)(1) is generic, and the case law construing it covers a wide variety of situations that really have little or nothing to do with the special considerations involved in tax determinations brought under the special and unique authority conferred by section 505. Better not to muddy the waters; better rather to develop a discrete body of law defining the parameters of the discretion afforded by section 505(a) itself.[14]

---

**14.** In this regard, the court retreats from its earlier position on this point in *Fairchild Aircraft*, where the court adverted that section 1334(c)(1) might apply to a section 505 determination. For the reasons stated in this opinion, the court now believes that proposition of law to have been faulty.