**In re MARCELLUS WOOD & TRUCKING, INC., Debtor.**

**MARCELLUS WOOD & TRUCKING, INC., Plaintiff,**

v.

**MICHIGAN EMPLOYMENT SECURITY COMMISSION, Defendant.**

**Bankruptcy No. GK 91–86182.
Adv. No. 92–8602.**

United States Bankruptcy Court, W.D. Michigan.

Sept. 22, 1993.

Thomas G. King and Jeffrey D. Swenarton, Marcellus, MI, for plaintiff Marcellus Wood & Trucking, Inc.

Donna K. Welch, Detroit, MI, for defendant Michigan Employment Sec. Com'n.

## OPINION REGARDING MESC'S MOTION FOR SUMMARY JUDGMENT

JAMES D. GREGG, Bankruptcy Judge.

### I. INTRODUCTION

On November 19, 1991, Marcellus Wood & Trucking, Inc. (the "Debtor") filed a

1. The Bankruptcy Code, as amended, is set forth at 11 U.S.C. §§ 101–1330.

2. The standards for granting or denying a motion for summary judgment recently have been addressed fully by this court. *See General Elec-*

voluntary petition for relief under chapter 11 of the Bankruptcy Code.[1] On December 4, 1992, the Debtor filed this adversary proceeding against the Michigan Employment Security Commission ("MESC"), asking this court, pursuant to 11 U.S.C. § 505, to determine the Debtor's tax liability to the MESC. The MESC filed a motion for summary judgment on June 15, 1993, which argues that 11 U.S.C. § 505(a)(2)(A) precludes this court from determining the Debtor's tax liability to the MESC. In the alternative, the MESC argues that summary judgment against the Debtor is appropriate given that no genuine issue of material fact exists as to the Debtor's status as a successor corporation to the sole proprietorship of Louis D. Pastorick ("Pastorick"), which, in turn, had used the assets or operated the business of Marcellus Industrial Wood Products, Inc.

A court may grant a motion for summary judgment "only where no genuine issue of material fact remains to be decided and the plaintiff is entitled to judgment as a matter of law." *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc. (In re Atlas Concrete Pipe, Inc.)*, 668 F.2d 905, 908 (6th Cir.1982) (citations omitted).[2] The MESC's motion for summary judgment on the basis of 11 U.S.C. § 505 involves an issue of law, not of fact. Therefore, the question this court initially must decide is whether the MESC is entitled to judgment as a matter of law under 11 U.S.C. § 505.

### II. DISCUSSION

#### A. *Section 505(a)(2)(A)*

■ This adversary proceeding involves 11 U.S.C. § 505(a), which provides, in pertinent part, as follows:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may de-

*tric Capital Corp. v. Hoerner (In the Matter of Grand Valley Sport & Marine, Inc.)*, 143 B.R. 840, 845–846 (Bankr.W.D.Mich.1992). The court sees no reason to reiterate those standards in this opinion.

termine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; ....

11 U.S.C. § 505(a).

Section 505(a)(2)(A) contains the following requirements: (a) a contest and an adjudication; (b) by a judicial or administrative tribunal of competent jurisdiction; (c) before the commencement of the case under the Bankruptcy Code. The critical issue before this court is whether the Debtor's tax liability has been contested and adjudicated.

On August 22, 1988, the MESC mailed its initial determination of the Debtor's status as a successor corporation to Pastorick. See MESC's Brief in Support of Motion for Summary Judgment, Exhibit B. On January 11, 1989, the MESC mailed to the Debtor a notice of the Debtor's contribution rate for calendar year 1988. See MESC's Brief in Support of Motion for Summary Judgment, Exhibit C. Michigan law requires an interested party to file an application for review of any determination within thirty days of the MESC's mailing of that determination. See MICH.COMP.LAWS ANN. § 421.32a(1). The Debtor failed to timely file an application for review of either MESC determination.

Sometime in 1989, the Debtor requested a redetermination of both determinations.[3] See MESC's Brief in Support of Motion for

Summary Judgment, Exhibits D and E. Michigan law allows untimely requests for review of MESC determinations "for good cause". See MICH.COMP.LAWS ANN. § 421.-32a(2). When the MESC denied the Debtor's request for redetermination, the Debtor timely filed a request for a hearing before a referee. See MESC's Brief in Support of Motion for Summary Judgment, Exhibits F and G; MICH.COMP.LAWS ANN. § 421.33(1).

A hearing was held before a referee, at which time representatives of the Debtor presented testimony under oath. The referee determined that good cause did not exist for the Debtor's late request for redetermination. See MESC's Brief in Support of Motion for Summary Judgment, Exhibit J at 19. The referee mailed a written opinion to the Debtor on May 24, 1990, as required by Michigan law. See MESC's Brief in Support of Motion for Summary Judgment, Exhibit K; MICH.COMP.LAWS ANN. § 421.33(1). The Debtor filed a timely appeal of the referee's decision to the Employment Security Board of Review (the "Board"). See MESC's Brief in Support of Motion for Summary Judgment, Exhibit L; MICH.COMP.LAWS ANN. § 421.33(2). On December 5, 1990, the Board affirmed the referee's decision. See MESC's Brief in Support of Motion for Summary Judgment, Exhibit M. On January 10, 1991, the Debtor filed an untimely application to reopen and review the Board's earlier decision. See MICH.COMP.LAWS ANN. § 421.34. On February 4, 1991, the Board denied the Debtor's application. See MESC's Brief in Support of Motion for Summary Judgment, Exhibit O. The Debtor filed no further appeals prior to filing for bankruptcy. See, e.g., MICH.COMP.LAWS ANN. § 421.38.

The uncontested facts of this adversary proceeding demonstrate that prior to filing for bankruptcy, the Debtor vigorously,

---

**3.** The Debtor submits that on March 22, 1989, it mailed a letter to Eugene Dombrzalski, a Liability Examiner for the MESC, contesting the MESC's determinations of successorship status and contribution rate. See MESC's Brief in Support of Motion for Summary Judgment, Exhibit E. The MESC, however, claims that the letter was not received until August 9, 1989; the letter bears an MESC date stamp of August 9, 1989. See id. This dispute over dates, however, is not relevant to this proceeding. Even if the Debtor mailed a letter to the MESC on March 22, 1989, the Debtor fails to satisfy the 30-day filing requirement of the Michigan statute. See MICH.COMP.LAWS ANN. § 421.32a(1).

though unsuccessfully, challenged the MESC's determination of the Debtor's tax liability. Thus, this proceeding differs from those in which the debtor allowed a default judgment to be entered against it. *See, e.g., Tapp v. Fairbanks North Star Borough (In re Tapp)*, 16 B.R. 315 (Bankr.D.Alaska 1981). The Debtor in this proceeding contested the MESC's determination, albeit in an untimely fashion. The Debtor appeared at and had the right to present "newly discovered material facts" or "additional or corrected information"[4] at an adjudicative hearing before a referee. The Board, on appeal, affirmed the referee's decision, after reviewing that decision "in the light of the evidence appearing in the record." *See* MESC's Brief in Support of Motion for Summary Judgment, Exhibit M. If the Debtor disagreed with the referee's decision and the Board's affirmance of that decision, the Debtor could have pursued further appeals to the circuit court and, later, the state court of appeals. *See* MICH.COMP.LAWS ANN. §§ 421.38(1), (4). By failing to do so, the Debtor surrendered its opportunity to have the Michigan state courts review the Board's decision to determine whether it was "contrary to law" or "not supported by competent, material, and substantial evidence on the whole record." MICH.COMP.LAWS. ANN. § 421.38(1); *see Tomei v. General Motors Corp.*, 194 Mich. App. 180, 183–84, 486 N.W.2d 100, 102 (1992).

The circumstances of this proceeding are closely analogous to those of *City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n*, 898 F.2d 122 (10th Cir.1990), *cert. denied*, 498 U.S. 823, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990).[5] In *City Vending*, the Oklahoma Tax Commission ("OTC") assessed taxes of approximately $85,000 against the debtor. The debtor challenged the assessment before the OTC on constitutional grounds. After a hearing, the OTC upheld the assessment, but declined to consider the debtor's constitutional claim, stating that the OTC lacked the authority to do so. The debtor failed to directly appeal the OTC's determination to the Oklahoma Supreme Court. Instead, the debtor filed a suit in federal court, which was dismissed. The debtor then filed an untimely appeal in state court. Finally, the Oklahoma Supreme Court denied the debtor's petition requesting the court to exercise original jurisdiction over the debtor's case. The Tenth Circuit held that § 505 precluded reconsideration of the debtor's tax assessments, *despite* the fact that the debtor never had had a hearing on the merits of his constitutional claim.

Although the merits of plaintiff's claims were never addressed, the instant appeal does not present the situation where the debtor has failed to assert any challenge to the assessment. *Plaintiff vigorously challenged the OTC assessment, albeit unsuccessfully due to his failure to invoke the appropriate state remedies in a timely fashion.*

*Id.* at 125. (Emphasis added).

Similarly, even if this court assumes *arguendo* that the merits of the Debtor's claims were never considered at the referee hearing, this adversary proceeding does not present a situation in which no challenge was mounted to the MESC's determination. The Debtor had a hearing before a referee to determine whether good cause[6] existed for the Debtor's late request for a redetermination of the MESC's determination of successorship status and contribution rate. At that hearing, the Debtor's representatives testified under oath. They had the opportunity to present evidence on good cause, including additional information, and to call and examine witnesses. *See* MICH.ADMIN.CODE rr. 421.1202(2), 421.1207 (1988). After that hearing, the Debtor was

---

4. *See* footnote 6 *infra.*

5. Other than *City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n*, 898 F.2d 122 (10th Cir. 1990), *cert. denied*, 498 U.S. 823, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990), no other reported decision has been found that directly addresses the precise issue now before the court.

6. Good cause includes consideration of "newly discovered material facts" and "additional or corrected information." MICH.ADMIN.CODE r. 421.270(1)(a), (b) (1986). Thus, an examination of such evidence by the referee may constitute a hearing on the merits.

entitled to appeal the referee's determination, and it did so. Therefore, the Debtor actually challenged the MESC's determination. The Debtor was unsuccessful, in part, due to the untimely filing of its request for redetermination. In this court's view, under the procedural history before the MESC tribunal, the requirement of a contest and adjudication pursuant to § 505(a)(2)(A) has been satisfied.

All other requirements of § 505(a)(2)(A) also are met. First, the referee's decision was that of an administrative tribunal of competent jurisdiction. MESC referee hearings are quasi-judicial proceedings. *See State Bar v. Galloway*, 422 Mich. 188, 190, 369 N.W.2d 839, 840 (1985). Evidence is offered, witnesses may be called and examined, and testimony is taken under oath. *See* MICH.ADMIN.CODE r. 421.1207 (1988). Second, the adjudication of the Debtor's tax liability was final prior to its filing for bankruptcy in November, 1991. Ten months earlier, in January, 1991, the Debtor took its final action before the MESC. In early February, 1991, the Board of Review determined that it would not reopen and review the Debtor's case. The Debtor took no further action before the MESC or Michigan state courts, thus rendering the Board's decision final. *See* MICH.COMP.LAWS ANN. § 421.34.

### B. *Section 505(a)(1)*

 Assuming *arguendo* that the Debtor's tax liability was *not* contested and adjudicated by an administrative tribunal of competent jurisdiction prior to the commencement of bankruptcy proceedings, this court would still decline to redetermine the Debtor's tax liability to the MESC. The Bankruptcy Code does not confer on debtors an *absolute* right to review by a bankruptcy court of state tax assessments. Section 505(a)(1) provides that "the court *may* determine the amount or legality of any tax...." 11 U.S.C. § 505(a)(1) (emphasis added). Thus, the court's power to review the Debtor's tax liability to the MESC

is discretionary. *See In re Galvano*, 116 B.R. 367, 372 (Bankr.E.D.N.Y.1990); *In re AWB Assocs.*, 144 B.R. 270, 275–76 (Bankr. E.D.Pa.1992); *El Tropicano, Inc. v. Garza* (*In re El Tropicano, Inc.*), 128 B.R. 153, 161 (Bankr.W.D.Tex.1991).

Courts agree that the policy underlying § 505 is the protection of the estate from a tax liability that a negligent or indifferent debtor failed to challenge. "[T]he primary purpose behind Section 505 is protection of the estate from the potential loss incurred because of a debtor's failure, due either to financial inability or mere indifference, to contest potentially incorrect tax assessments." *In the Matter of East Coast Brokers & Packers, Inc.*, 142 B.R. 499, 501 (Bankr.M.D.Fla.1992) (citation omitted). *See also City Vending of Muskogee, Inc.*, 898 F.2d at 125; *Northwest Beverage, Inc. v. Johnson* (*In re Northwest Beverage, Inc.*), 46 B.R. 631, 635 (Bankr.N.D.Ill.1985); *Ledgemere Land Corp. v. Town of Ashland* (*In re Ledgemere Land Corp.*), 135 B.R. 193, 196–97 (Bankr.D.Mass.1991); *In re Galvano*, 116 B.R. at 372; *In re AWB Assocs.*, 144 B.R. at 277.

Congress's concern that a debtor's inaction might prejudice the rights of creditors is not implicated in this adversary proceeding. Any benefit obtained by a redetermination of the Debtor's tax liability to the MESC would inure directly and solely to the Debtor, not the creditors of the estate. On March 4, 1993, this court signed an order confirming the Debtor's First Amended Plan of Reorganization (the "Plan"). The Plan recognizes the Debtor's challenge to the MESC's claim. *See* Debtor's First Amended Plan of Reorganization at 3.03, 4.03. The Plan, however, does not provide for additional payments to *any* creditor in the event that the Debtor is successful in its challenge to the MESC's tax liability claim. In fact, if the unsecured portion of the MESC's claim[7] were disallowed, the money escrowed by the Debtor during the pendency of this adversary proceeding would "be forfeited and

---

**7.** On April 9, 1992, the MESC filed proofs of claim against the Debtor for $12,960.19 in general unsecured claims and $27,091.34 in priority claims for a total of $40,051.53. *See* Answer of The Michigan Employment Security Commission ¶ 6.

utilized by Debtor as working capital, a sinking fund for equipment needs, and salary for Don Pastorick." Debtor's First Amended Plan of Reorganization at 4.11.

In addition, if the Debtor were successful before this court in challenging the MESC tax liability, the creditors of the Debtor would not be able to amend the Plan in order to obtain any portion of the tax savings obtained. The Plan states that "[t]he payments, distributions and other treatments provided in respect to each Allowed Claim and Allowed Interest in this Article IV [Treatment of Claims and Interests] shall be in complete satisfaction, discharge and release of such Allowed Claim and Allowed Interest." Debtor's First Amended Plan of Reorganization at 4.14(a). Section 1141(a) of the Bankruptcy Code provides, with exceptions not relevant to this proceeding, that "the provisions of a confirmed plan bind the debtor, ... and any creditor, ... whether or not the claim or interest of such creditor, ... is impaired under the plan and whether or not such creditor, ... has accepted the plan." 11 U.S.C. § 1141(a). Thus, absent fraud and a request by a party in interest filed within 180 days of March 4, 1993 (the date of the order confirming the Plan), the creditors are bound to the terms set forth in the Plan. *Cf. Thompson v. Kentucky Lumber Co.* (*In re Kentucky Lumber Co.*), 860 F.2d 674 (6th Cir.1988) (unsecured creditors were not entitled to post-petition interest on their claims when the confirmed plan did not provide for payment of such interest, the plan at the time of confirmation was in the best interests of the creditors, and the creditors raised their objections only after confirmation). Under these circumstances, it is not appropriate for this bankruptcy court to hear additional litigation regarding the MESC tax assessments.

### III. CONCLUSION

This court concludes that 11 U.S.C. § 505(a)(2)(A) prevents it from again determining the Debtor's tax liability to the MESC. Even if § 505(a)(2)(A) does not preclude such a determination, this court would decline to exercise its discretion, pursuant to 11 U.S.C. § 505(a)(1), to revisit the issue of the Debtor's tax liability to the MESC. Accordingly, this court grants the MESC's motion for summary judgment. An order shall be entered accordingly.

### *ORDER GRANTING MESC'S MOTION FOR SUMMARY JUDGMENT*

At a session of said Court of Bankruptcy, held in and for said District on September 22, 1993.

On September 22, 1993, this court rendered its written Opinion Regarding MESC's Motion for Summary Judgment. A copy of that opinion is incorporated herein by reference.

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Complaint to Determine Tax Liability, filed on December 4, 1992, is DISMISSED WITH PREJUDICE.