**TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, Appellant,**

v.

**TRANS STATE OUTDOOR ADVERTISING CO., INC., Appellee.**

**In re TRANS STATE OUTDOOR ADVERTISING CO., INC., Debtor.**

**Civ.A. No. H–96–2353. Bankruptcy No. 93–41500–H2–11.**

United States District Court, S.D. Texas, Houston Division.

July 26, 1997.

Kay Diebel Brock, Office of Attorney General, Austin, TX, for Texas Comptroller of Public Accounts.

Sidney L. Farr, Attorney at Law, Houston, TX, for Trans State Outdoor Advertising Company, Inc.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

This is an appeal from a final order of the bankruptcy court in a core proceeding. The bankruptcy court disallowed the priority sales tax claim of the Comptroller of the State of Texas (the "Comptroller"), asserted against the Chapter 11 debtor, Trans State Outdoor Advertising Co., Inc. ("Trans State"). Appellant asserts that the bankruptcy court lacked jurisdiction under 11 U.S.C. § 505(a)(2)(A) to redetermine the tax claim and misapplied state law in denying the claim. Finding that the bankruptcy court did not have jurisdiction, this court reverses and remands for proceedings consistent with this opinion.

## I. Background

In 1991, the Comptroller performed a sales and use tax audit on Trans State for the audit period October 1, 1987 through June 30, 1991. In November 1991, the Comptroller issued an invoice to Trans State, assessing a deficiency due to taxable purchases for which no tax was paid. In December 1991, Trans State sent a letter to the Comptroller, requesting a redetermination hearing on the Comptroller's sales and use audit assessment. This letter initiated Administrative Hearing No. 29,369. The Tax Division of the Comptroller filed its position letter. (Record Item 6, Ex. 3) Trans State responded, asserting that some of the invoices scheduled in the audit were the result of purchases by companies other than Trans State. Trans State blamed its former president and accountant for misapplying Trans State funds by using Trans State's funds and name for purchases without authority to do so. The Tax Division responded that because there was no documentation presented to support the removal of the invoices at issue from the audit, and because the invoices were billed in Trans State's name and paid with Trans State funds, Trans State was responsible for the sales tax liability. (Record Item 6, Ex. 3).

The Administrative Law Judge considered all the submissions and entered his Proposed Comptroller's Decision on August 14, 1992. The Administrative Law Judge recommended that the audit stand without change. Trans State filed written exceptions to the proposed Decision, to which the Tax Division responded. The Administrative Law Judge issued the Comptroller's Decision on January 21, 1993, rejecting Trans State's contention that the tax liability was the responsibility of another company that had used Trans State's funds and name for the invoices at issue, without authorization. On the same date, the Comptroller issued the Order of the Comptroller, approving and adopting the decision of the Administrative Law Judge. The order became final twenty days thereafter. Trans State did not appeal the order.

On February 24, 1993, Trans State filed a bankruptcy proceeding under Chapter 11 of the Bankruptcy Code. On August 16, 1993, the Comptroller filed a claim for prepetition sales and use taxes and interest, in the amount of $41,318.46.

The Chapter 11 plan was confirmed on August 18, 1994. In October 1994, Trans State filed an objection to the allowance of the Comptroller's claim in its bankruptcy. The bankruptcy court held a hearing and concluded in a letter ruling that it had jurisdiction to hear the claims objection. At the trial on the merits, Trans State representatives testified that Trans State had entered into oral agreements with contractors from which it made purchases to include all sales taxes in the contractors' invoices, and that Trans State did not owe taxes to the state because Trans State had paid the taxes to the contractors. The auditor from the Comptroller's office testified that Trans State had no records to support its assertion that it had paid the taxes to the sellers when the purchases were made.

The bankruptcy court issued a second letter ruling in May 1996, finding that Trans State had requested that its supplier of materials and services include the sales taxes in its invoice and that the seller agreed to do so. The bankruptcy court agreed with the Comptroller that the sales tax was not separately

stated on the seller's invoices and that there was no written statement that the stated price included the tax. Despite the absence of such documentation, which is required by the Texas Tax Code, the bankruptcy court concluded that Trans State, the purchaser, should not be required to pay the tax.

The Comptroller appeals.

## II. The Standard of Review

In reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir.1992). This court will not set aside a bankruptcy court's findings of fact unless they are clearly erroneous. FED.R.BANKR.P. 8013; *In Matter of McDaniel*, 70 F.3d 841, 843 (5th Cir.1995). A finding of fact is clearly erroneous if, after review of all the evidence, the court is left with a firm and definite conviction that the bankruptcy court erred. *Id.* at 843. This court reviews legal conclusions *de novo. Id.; In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir.1993).

## III. Jurisdiction Under Section 505(a)(2)(A) of the Bankruptcy Code

Section 505 of the Bankruptcy Act gives federal courts authority to determine, in bankruptcy proceedings, the amount and legality of any tax, 11 U.S.C. § 505(a)(1), except where the amount and legality of the tax has been "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction" before bankruptcy proceedings began. 11 U.S.C. § 505(a)(2)(A).[1] The question presented in this appeal is whether the Texas sales tax assessment was "contested before and adjudicated by a judicial or administrative tribu-

nal of competent jurisdiction" such that federal review was precluded under section 505.

The Fifth Circuit has recognized that the basis of section 505(a)(2) is the "express[ion] in jurisdictional terms, [of] traditional principles of *res judicata,* or claim preclusion." *In re Teal*, 16 F.3d 619, 621 n. 3 (5th Cir.1994). In order for section 505(a)(2)(A) to apply, and for the prior determination to have preclusive effect on the bankruptcy court's determination, the amount of the tax must have been "contested before and adjudicated by a ... tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(2)(A). The issue before this court is whether the hearing and adjudication by the Administrative Law Judge and Comptroller meet the requirements of section 505(a)(2)(A).

### A. The Administrative Hearing and Adjudication

The Texas Administrative Code sets out the rules governing taxpayers' disputes over the amount of taxes assessed by the Comptroller. 34 TEX.ADMIN.CODE § 1.1 *et seq.* Section 1.3 defines a "contested case" as a "proceeding in which the legal rights, duties, or privileges of a party are to be determined by the agency after an opportunity for adjudicative hearing. It includes a request for redetermination or refund.... Contested cases are within the jurisdiction of the administrative law judges." Section 1.5 of the Code provides for a taxpayer's initiation of a deficiency proceeding; section 1.9 provides for the agency's response. If the taxpayer requests a decision on written submission rather than an evidentiary hearing, the administrative law judge decides the case based on documents and briefs submitted. *Id.* § 1.12. Section 1.14 provides for a notice of setting by the assigned administrative law judge; sections 1.15 and 1.16 provide that the

---

1. Section 505(a) of the Bankruptcy Code provides:

   (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal or competent jurisdiction.

   (2) The court may not so determine—
   (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;....

   11 U.S.C. § 505(a).

taxpayer and tax division may file additional facts and legal arguments for the administrative law judge to consider. The taxpayer may request a hearing. *Id.* §§ 1.10, 1.12. If the taxpayer makes such a request, under section 1.17, the administrative law judge is authorized to conduct a hearing, including examining witnesses and ruling on evidence, and to propose decisions to the Comptroller of Public Accounts. The conduct of the hearing is governed by section 1.21, which provides for each party to have an opportunity to present witnesses and cross-examine opposing witnesses. The rules of evidence promulgated by the Texas Supreme Court apply. *Id.* § 1.22. Any party may request the assigned administrative law judge to subpoena witnesses or require document production, or the judge may do so "independently." The witnesses testify under oath. *Id.* § 1.23. All contested cases heard by an administrative law judge are recorded. *Id.* § 1.26. *Ex parte* communications with the administrative law judge are forbidden. *Id.* § 1.41.

The assigned administrative law judge[2] prepares a proposed decision; the parties may file exceptions. *Id.* § 1.27. Before the proposed decision is given effect, it must be approved by the Comptroller. *Id.* § 1.28. A motion for rehearing may be filed. If a motion for rehearing is not filed within twenty days, the Comptroller's decision becomes final. *Id.* The taxpayer may appeal by filing suit in a state district court. TEX.TAX CODE ANN. § 112.052 (West 1992). The trial court's review is *de novo. Id.* § 112.054. If no suit is filed, the Comptroller's decision becomes final. *Id.* § 112.052.

In this case, the taxpayer, Trans State, initiated an administrative redetermination hearing on the Comptroller's deficiency assessment. Trans State requested a hearing. (Record Item 6, Ex. 2). The Administrative Law Judge filed a Notice of Setting of Written Submission Hearing; the Tax Division filed a position letter, and Trans State filed its reply, to which the Tax Division responded. The assigned Administrative Law Judge entered the Proposed Comptroller's Decision;

Trans State filed its exceptions; the Tax Division responded. The Comptroller issued its Decision on January 21, 1993, and it became final on February 10, 1993. Trans State did not file a motion for reconsideration and did not seek review by filing suit in a Texas state district court.

## B. Discussion

■ The bankruptcy court judge found that three aspects of this hearing process precluded a finding that the Comptroller's decision was a "judicial or administrative tribunal of competent jurisdiction" within the meaning of section 505(a)(2)(A). First, the administrative law judge was appointed by the Comptroller, and was not "independent"; second, the administrative law judge only prepared a proposed decision, which did not bind the Comptroller; and third, the appeal to a court by the taxpayer was through a trial *de novo,* so that the state procedure did not give *res judicata* effect to the administrative ruling. (Letter Ruling dated July 25, 1995, Docket Entry No. 10).

The case law interpreting and applying section 505(a)(2)(A) does not support the restrictive reading given by the bankruptcy court. In *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), the Supreme Court held that an administrative board's determinations were final and conclusive, having provided the parties with a full and fair opportunity to litigate, with respect to all claims as to which the board had jurisdiction. In *City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n,* 898 F.2d 122 (10th Cir.), *cert. denied,* 498 U.S. 823, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990), a debtor in bankruptcy challenged two tax assessments imposed by the Oklahoma Tax Commission. The plaintiff had failed to pay state tax on cigarettes sold wholesale to Indian tribes. The plaintiff filed a protest with the state tax commission, asserting that the sale of cigarettes to Indian tribes was exempt from the state tax under the United States Constitution's interstate commerce clause. The state tax commission

---

**2.** An administrative law judge is "[a]n individual appointed by the comptroller to conduct hearings on matters within the comptroller's jurisdic- tion and to prepare proposed decisions to properly resolve such matters." 34 TEX.ADMIN.CODE § 1.42.

upheld the tax assessment, but ruled that it lacked authority to determine the constitutional claim. Although the plaintiff could have done so, it did not appeal the state tax commission's decision to the state court; the commission's decision therefore became final under state law.

The Tenth Circuit considered the application of section 505 in policies behind its enactment:

> First, § 505 allows the prompt resolution of a debtor's tax liability, where that liability has not yet been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition.... Secondly, § 505 protects "creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest."

*City Vending of Muskogee v. Oklahoma Tax Comm'n,* 898 F.2d at 124–25 (internal citations omitted). The court concluded that because under state law there was a final adjudication on the merits of plaintiff's claims before the bankruptcy filing, the district court lacked jurisdiction to review the state tax assessment. *Id.* The court noted that although the plaintiff had been entitled to a full evidentiary hearing on both tax assessments at issue, the plaintiff had chosen to have its protest of the second assessment considered on the pleadings. This fact did not preclude the application of section 505(a)(2)(A) in that case, and does not in the present proceeding.

A number of bankruptcy courts have held that they lack jurisdiction to relitigate tax matters determined by state or local tribunals if those tribunals were "quasi-judicial" and provided an opportunity for a contested hearing. In *In re El Tropicano, Inc.,* 128 B.R. 153 (Bankr.W.D.Tex.1991), the court held that it lacked jurisdiction to redetermine Texas property taxes due for three different tax years. For two of those years, the taxpayer had negotiated a settlement of the disputed tax with the county appraisal district. For the third year, the appraisal district had placed a value on the property after a contested hearing. The bankruptcy court

held that both determinations were "adjudications" by a "quasi-judicial" administrative tribunal of competent jurisdiction that precluded further review.

In reaching this holding, the *In re El Tropicano* court specifically rejected an argument similar to the third point of the bankruptcy court's letter ruling in this case. The court emphasized that the availability of *de novo* state district court review of the administrative body's decision did not affect the result under section 505(a)(2)(A). In *In re El Tropicano,* as here, the time for appealing the administrative body's determination had expired before the taxpayer filed for bankruptcy, and the taxpayer had not followed the Texas Tax Code provisions for seeking reconsideration of the administrative determination. Under Texas law, the administrative decision then became final. The *El Tropicano* bankruptcy court concluded:

> If such [determinations] are final under Texas law, they should be final under federal law as well, and ought to count as matters that were "contested before and adjudicated by a judicial *or administrative* tribunal."

128 B.R. at 160 (emphasis in original).

The bankruptcy court continued with an analysis of facts that are, in relevant respects, similar to those presented in the instant appeal:

> It should further be noted that, in *Utah Construction,* the Supreme Court found relevant to its analysis that "both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings" in the administrative proceeding. 384 U.S. at 422, 86 S.Ct. at 1560. In our case, the Debtor had "an opportunity to appear [and] to offer evidence or argument" before the Bexar Appraisal Review Board. Tax Code, § 41.45(b). The Debtor also had the right to appeal this decision to the district court, where it could have obtained a *de novo* review before judge and jury, had it so desired. Tax Code, §§ 42.21(a), 42.23. The Debtor here thus had the *full and fair opportunity* to both argue its version of the facts, and to seek court review of any adverse findings, thus

satisfying the standards of *Utah Construction*. Regardless whether the Debtor in fact exhausted its remedies, the decision entered by the Bexar Appraisal Review Board, in light of the concerns discussed in *Utah Construction*, counts as an adjudication within the meaning of Section 505(a)(2).

*Id.* (emphasis in original).

In the present case, as in *City Vending of Muskogee* and *El Tropicano*, the taxpayer had a full and fair opportunity to contest the tax assessment before a tribunal of competent jurisdiction. The decision on the challenge to the tax assessment became final under state law. The requirements of section 505(a)(2)(A) are met.

In *In re Northwest Beverage, Inc.*, 46 B.R. 631 (Bankr.N.D.Ill.1985), the bankruptcy court rejected arguments similar to the first and second points of the bankruptcy court's letter ruling in the present case. In *In re Northwest Beverage*, the bankruptcy court found itself precluded from rehearing tax assessments for the sale of alcoholic beverages. The taxpayer had protested the tax assessment and requested a hearing, at which it cross-examined the state's witnesses. The hearings officer was an officer of the Illinois Department of Revenue. Following the hearing, the hearings officer made its recommendation to the Director of the Department of Revenue, who issued final assessments. Despite the absence of an "independent" judge, and despite the fact that the hearings officer made a recommendation to the Director, rather than a "binding" decision, the bankruptcy court found that the proceeding met the requirements of section 505(a)(2)(A). The court specifically found that hearings conducted by an officer who represented the Department and made recommendations to the Director were adversarial, and, because of the opportunity to request discovery and hold an evidentiary hearing, quasi-judicial.

Other courts have reached similar results. In *In re Marcellus Wood & Trucking, Inc.*, 158 B.R. 650 (Bankr.W.D.Mich.1993), the debtor sought a redetermination of its state unemployment tax liability by the Michigan Employment Security Commission. After the state commission denied the debtor's request for redetermination, the debtor filed a request for hearing before a "referee." The referee held a hearing and determined that good cause did not exist for the request for redetermination. The debtor appealed the referee's decision to the Employment Security Board of Review, which affirmed the referee. The debtor could have pursued further appeals to the state courts, but did not, which made the decision of the board final. The bankruptcy court concluded that under section 505(a)(2)(A), it lacked jurisdiction to review the tax assessment. The court found that the requirement of a contest and adjudication was satisfied by the procedural history of the taxpayer's challenge of the assessment. The court also found that the referee's decision "was that of an administrative tribunal of competent jurisdiction," noting that "referee hearings are quasi-judicial proceedings." Finally, the adjudication of the tax liability was final under state law before the taxpayer filed for bankruptcy. *Id.* at 654; *see also In re Ishpeming Hotel Co.*, 70 B.R. 629 (Bankr.W.D.Mich.1986); *In re Washington Mfg. Co.*, 120 B.R. 918, 920 (Bankr.M.D.Tenn.1990).

In the present case, under Texas law, Trans State vigorously contested the Comptroller's deficiency assessment. The proceeding was adversarial before a tribunal of competent jurisdiction, and the tribunal was quasi-judicial. The decision of the tribunal became final under Texas law before Trans State filed for bankruptcy. This is not a case in which the policy underlying section 505, the protection of the estate from a tax liability that a negligent or indifferent debtor failed to challenge, is implicated.[3] This court concludes that the bankruptcy court lacked jurisdiction under section 505(a)(2)(A) to redetermine Trans State's tax liability to the Comptroller.

---

**3.** " '[T]he primary purpose behind Section 505 is protection of the estate from the potential loss incurred because of a debtor's failure, due either to financial inability or mere indifference, to contest potentially incorrect tax assessments.' "

*In re Marcellus Wood & Trucking, Inc.*, 158 B.R. at 654 (quoting *In re East Coast Brokers & Packers, Inc.*, 142 B.R. 499, 501 (Bankr.M.D.Fla. 1992)); *see also City Vending of Muskogee v. Oklahoma Tax Comm'n*, 898 F.2d at 125.

### IV. Conclusion

This court reverses the decision of the bankruptcy court and remands to that court for proceedings consistent with this memorandum and opinion.